**Royce Colon PATTERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60995.**

Court of Criminal Appeals of Texas, Panel No. 3.

April 16, 1980.

Rehearing Denied May 28, 1980.

---

Ed Stapleton, Denton, Bill Kimble, San Angelo, for appellant.

Robert J. Glasgow, Dist. Atty., and Robert S. Lee, Asst. Dist. Atty., Stephenville, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated rape. Punishment was assessed by the jury at 75 years confinement. The sufficiency of the evidence is not challenged.

The record reflects that on April 6, 1978, the complaining witness, R_____ J_____ P_____, was awakened about 2:00 a. m. when a man jumped on her back, and began repeatedly beating her on the head with a pipe. The assailant told the victim to shut up, and that he was going to kill her. The appellant tore a sheet, and bound her hands with strips, then covered her head with a pillow. The victim was raped three times. Dr. Jasbir Sing Ahluwalia testified that he treated the complaining witness at the emergency room of the hospital for multiple deep lacerations which were to the bone on her scalp. He testified that she was in shock due to loss of blood and neurogenic shock, caused by the pain of the injuries she received. The doctor testified that the victim would have died if she had not received immediate medical treatment. After treating the victim's head injuries, the doctor examined her and found live sperm, which indicated recent sexual intercourse. At trial, the complaining witness identified the appellant as the man who attacked her. She said that she had known him many years, as the appellant's mother lived across

the street from her. Although she did not see the appellant's face, she recognized him because of his "tall slender figure," and his voice. She testified that the appellant had a speech impediment and that he slurred his words. The complaining witness' eight-year-old son testified that he woke up that night when he heard his mother screaming. He said that he went to her door, but his mother told him to get back in bed. The son identified the appellant as the man he saw leaving his mother's room that night. Officer Ronnie Meyers testified that the victim's bedroom looked like a "slaughter-house," that there was blood covering the bed, floor, and walls. Meyers said that he went to the appellant's mother's house at 4:00 a. m. that night, and that he observed, while talking to appellant, that appellant appeared freshly bathed and his hair was damp.

In ground of error number one, the appellant contends that the trial court committed reversible error in denying appellant's special plea of double jeopardy. We disagree.

On May 22, 1978, pre-trial hearings were held and the jury was impaneled for the first trial. The next day, evidence was presented and the State rested at the end of the day. On the 24th of May, the charge was read to the jury, and at 12:25 the jury was sent to deliberate. The jury requested to break for lunch shortly thereafter, and the court was adjourned until 2:00. At 5:15, a note was received from the jury which stated that they were divided 7–5, and were unable to reach an agreement. The court sent a note to the jury to continue its deliberations. At 6:49 another note was received from the jury which stated that they were still divided 7–5 and were unable to reach an agreement. The court asked if there were any objections to the granting of a mistrial. The defense objected. The jury was brought in and the record reflects the following:

"THE COURT: Mrs. Span, are you the fore—the forelady or foreman?
FORELADY: Yes.
THE COURT: I have your note that you're divided seven to five, I don't want any of you to say which way you're divided, but I have your note that you're divided seven to five, do you think that there is a possibility of reaching a verdict if you deliberate longer?
FORELADY: No, sir.
THE COURT: Let me ask the entire panel, how many of you think you might reach a verdict if you deliberated longer? Do any of you think you might?
JURY PANEL: No.
THE COURT: If there are any of you who think you might reach a verdict if you deliberated longer, would you raise your hand? Let the record show there are no hands. Let me ask you Mrs. Span, has it been seven to five all the way?
FORELADY: From the beginning.
THE COURT: From the beginning?
FORELADY: Yes, sir.
THE COURT: And that has not changed?
FORELADY: Not changed.
THE COURT: And you started your deliberations after you came back from eating lunch.
FORELADY: From lunch.
THE COURT: At approximately two o'clock, is that right?
FORELADY: That's right.
THE COURT: Of course, after we spend three days here, I would hope that we could have a verdict, but if we can't, we can't—huh—and considering the division, almost equal division—let me ask the question that I asked previously, but another way. How many of you think you will not reach a verdict if you deliberate longer, would you raise your hands? How many of you think you will not reach a verdict if you stay longer? Okay. Let the record show there is (sic) eleven hands up. All right. I will declare a mistrial, and discharge the Jury."

Article 36.31, Vernon's Ann.C.C.P. provides:

"After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion

discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."

The rule is well settled that the exercise of discretion in declaring a mistrial is determined by the amount of time the jury deliberates considered in light of the nature of the case and the evidence. *Beeman v. State*, 533 S.W.2d 799 (Tex.Cr.App.1976); *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App. 1974). In *Brown v. State*, supra, the Court stated that in order to determine whether a jury has been prematurely discharged, we must know some of the facts to indicate the amount and length of testimony the jury was called upon to consider in their deliberations, we must know the time consumed by the trial and then weigh this time element against the time that the jury deliberated prior to their discharge.

In *Beeman v. State*, supra, this Court reversed the defendant's conviction, holding that the trial court abused its discretion in declaring a mistrial and that the trial court should have sustained the defendant's plea of former jeopardy. In *Beeman v. State*, supra, the jury was out for two hours before being discharged by the court. The initial vote of the jury in *Beeman v. State*, supra, was 6–6, then 8–4, and when the jury was discharged, the vote was 10–2. Only the jury foreman was questioned concerning the deliberations, and the court declared a mistrial over the objections of both the State and the defendant.

■ In the case at hand, the presentation of the evidence took less than one day. The jury deliberated for over four hours. The jury was deadlocked 7–5 from the beginning and their positions did not change throughout their deliberations. Each juror was questioned to see if anyone thought there was a possibility of reaching a verdict. We find that the trial court did not abuse its discretion in discharging the jury.[1] See *Muniz v. State*, 573 S.W.2d 792 (Tex.Cr.App.

1978); *Satterwhite v. State*, 505 S.W.2d 870 (Tex.Cr.App.1974). The ground of error is overruled.

■ In ground of error number two, the appellant contends that the trial court erred in overruling his objection to the admission of hair samples taken from his body. At the trial, State's Exhibit 26, consisting of hairs taken from appellant's head and sideburn, and State's Exhibit 27, consisting of hair taken from appellant's chest, were introduced into evidence and compared with hair found at the scene of the crime. Appellant contends that the admission of this evidence taken without his consent violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.

In *United States v. D'Amico*, 408 F.2d 331 (2d Cir. 1969), the Second Circuit was confronted with this identical issue. The court held:

"Unquestionably the clipping of the few strands of appellant's hair by a federal agent constituted a 'seizure' that might conceivably be subject to the 'constraints of the Fourth Amendment,' (citations omitted) but the fact that the officer failed to obtain a search warrant before cutting off the hairs does not necessarily require that we hold that this 'seizure' was an unconstitutional one. *Schmerber*, supra[2] relied on by appellant is inapposite. In *Schmerber* the Court held that certain official intrusions into an individual's person require a search warrant in order for the intrusions to be deemed reasonable and not violative of the Fourth Amendment unless the exigencies of the circumstances of a case justify the failure to obtain a search warrant in that case. This holding does not comprehend that all official intrusions into an individual's person require, in the absence of

---

1. We note that the appellant's attorney moved for a mistrial during the second trial when the jury sent a note after three hours and 10 minutes of deliberation that they were hung at 10–2.

2. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

extenuating circumstances, a search warrant in order to be reasonable. Some official in-custody investigative techniques designed to uncover incriminating evidence from a person's body are such minor intrusions into or upon the 'integrity of an individual's person' that they are not, in the absence of a search warrant, unreasonable intrusions. (Footnote omitted) ' "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States v. Rabinowitz*, 339 U.S. 56, 66, [70 S.Ct. 430, 94 L.Ed. 653].' *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967)."

The court concluded:

"We fail to see how the taking of several strands of appellant's hair from his head while the appellant was in custody was any more prejudicial or offensive than the taking of his fingerprints or his photograph. The seizure which occurred in this case was not an unreasonable one or one violative of the Fourth Amendment."

The appellant relies on *Escamilla v. State*, 556 S.W.2d 796 (Tex.Cr.App.1977). In that case we held that the taking of a blood sample was a search and seizure within the meaning of Art. I, Sec. 9 of the Texas Constitution, and the State was thus required to comply with Art. 1.06 and Chapter 18, Vernon's Ann.C.C.P. The Court held that the State's "Motion for permission to obtain a sample of defendant's blood" did not meet the requirements of an affidavit upon which a search warrant may issue. We find that *Escamilla v. State*, supra, does not control the issue presented in this case.

In *Commonwealth v. Tarver*, 369 Mass. 302, 345 N.E.2d 671 (1975), samples of the defendant's hair were taken from his head, chest, and pubic area, and compared with hair found on the victim. The Supreme Judicial Court of Massachusetts held that the taking of hair samples was not unreasonable within the meaning of the Fourth Amendment in that the taking of hair samples was not an unreasonable bodily intrusion, if one at all. In *State v. Grijalva*, 111 Ariz. 476, 533 P.2d 533 (1975), cert. denied, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975), the Supreme Court of Arizona stated that the "clipping [of] several head hairs is only the slightest intrusion upon the body, if any at all, and does not constitute anything unreasonable."

In *Brent v. White*, 398 F.2d 503 (5th Cir. 1968, cert. denied, 393 U.S. 1123, 89 S.Ct. 998, 22 L.Ed.2d 130 (1969), the defendant contended that the scraping of his penis which revealed the menstrual blood of the victim's type violated his Fourth Amendment rights. The Fifth Circuit held that the scraping constituted a permissible search of the person incident to a lawful arrest and involved no intrusion of the body surface.

In *United States v. Lilly*, 576 F.2d 1240 (5th Cir. 1978) the Fifth Circuit was confronted with the question of the legal validity of body cavity searches conducted on federal inmates after unsupervised absences from prison. The court stated:

"It is settled law that the determination of reasonableness in any fourth amendment case depends on the particular facts of that case. To determine whether a particular search or seizure was reasonable, the court must balance the public interest in conducting the search against the individual's fourth amendment interest. (Citations omitted) The more intrusive is a particular search or seizure, the heavier is the government's burden of proving the reasonableness of that search or seizure. *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir. 1978).

Although few searches are more intrusive than a body cavity search, we do not hold that such searches are per se unreasonable."

The above cases consider the degree of the intrusion to determine whether such intrusion was reasonable or unreasonable. In *Escamilla v. State*, supra, we found that the intrusion beneath the body surface required the safeguards afforded by the procurement of a search warrant in order to be reasonable. Cf. *Schmerber v. Cal.*, supra; *Rochin v. Cal.*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). We find that the taking

of hair samples involves such a minor intrusion upon the body, if one at all, that the seizure was not unreasonable. The ground of error is overruled.

■ In ground of error number three, appellant contends that State's Exhibit 30, a pubic hair taken from the complaining witness, was erroneously admitted into evidence because the chain of custody was broken. At trial, Officer Donnie Hensley testified that he obtained the hair sample, placed it in an envelope, and mailed it to the Texas Department of Public Safety Laboratory in Waco. The Department of Public Safety chemist testified that she received the hair sample in the mail. Defense counsel objected to the introduction of the exhibit, stating, "We'll object to the introduction of Number Thirty on the basis of an improper chain of custody, because the means of journey to its holding place being the mail is improper chain of custody." No evidence indicating loss of possession or tampering was introduced into evidence. No error has been shown. See *Hicks v. State*, 545 S.W.2d 805 (Tex.Cr.App.1977); *Atkins v. State*, 515 S.W.2d 904 (Tex.Cr. App.1974). The ground of error is overruled.

■ In ground of error number four, appellant contends that the trial court erred in denying the appellant's requested charge on circumstantial evidence. We find that a charge on circumstantial evidence was not required. The complaining witness testified that while she did not see the appellant because a pillow was placed over her head, she was able to identify him because of his "tall slender figure" and his voice. The complaining witness testified that she had known the appellant for many years, and that the appellant had a speech impediment. As we have previously held, voice identification constitutes direct evidence, therefore, a charge on circumstantial evidence is not required. *McInturf v. State*, 544 S.W.2d 417 (Tex.Cr.App.1976). See *Norton v. State*, 564 S.W.2d 714 (Tex.Cr. App.1978). The ground of error is overruled.

■ In ground of error number five, appellant asserts that the trial court erred in overruling his request for the written report of Officer Gerald Sorrell for cross-examination purposes. Sorrell testified on direct examination concerning the chain of custody of the physical evidence. He said that he arrived at the complaining witness' house and collected and tagged the evidence. He identified State's Exhibits 21–24 as being the bedsheets, shreds of sheets and the pillowcase which were removed from the complaining witness' bed. On cross-examination, defense counsel asked Sorrell if he made a written report of his investigation. Sorrell said that he did make a report, but that he did not have the report with him. The appellant's objection that the report be made available for cross-examination was overruled. The appellant relies on *Darrington v. State*, 493 S.W.2d 244 (Tex.Cr.App.1973). In *Darrington v. State*, supra, the Court held that the *Gaskin* rule [3] entitles an accused to view witnesses' written statements regardless of whether or not the witnesses used the statements to refresh their memories. The Court held that it was error to refuse the defendant access to the written report since it was requested during cross-examination for purpose of impeachment.

*Norman v. State*, 575 S.W.2d 34 (Tex.Cr. App.1979) involved a similar situation to the case at hand. In *Norman v. State*, supra, the police officer's report could not be found for cross-examination purposes. We held that the inability of the prosecutor to produce the statement was harmless error under the circumstances of the case, noting, "However, it would have been a better practice for the prosecution to have called an officer or officers to testify concerning the failure to locate the missing statement." In the case at hand, a hearing was held on March 5, 1979, before the trial court, wherein Officer Sorrell testified that he left the Stephenville Police Department in April of 1978, several months prior to the trial. He said that when he left, he turned all of his

3. *Gaskin v. State*, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1961).

materials over to Officer Hensley. Officer Hensley testified that he had read the report, and that the report inventoried the evidence seized, and stated when and where it was seized. Hensley stated that he had tried to find the report, but was unable to do so. The Assistant District Attorney testified that he had never seen the officer's report. We find that any error in failing to produce the missing report was harmless. This ground of error is overruled.

■ In ground of error number six, appellant contends that the trial court erred in failing to set aside the indictment, on the grounds that it does not set forth an offense because it fails to allege that Royce Colon Patterson did have sexual intercourse with a female.

The pertinent part of the indictment is as follows:

". . . Royce Colon Patterson, on or about the 7th day of April, A.D. 1978, and before the presentment of this indictment, in said County and State, did then and there intentionally and knowingly by force, that overcame such earnest resistance as might reasonably have been expected under the circumstances, compel [R_____ J_____ P_____], a female not his wife, to submit to sexual intercourse without her consent, and the said Royce Colon Patterson did then and there intentionally and knowingly during the course of the same criminal episode, cause serious bodily injury to [R_____ J_____ P_____].

* * * * * *

. . . Royce Colon Patterson, on or about the 7th day of April, 1978 and before the presentment of this indictment in said County and State, did then and there intentionally and knowingly by force, that overcame such earnest resistance as might reasonably have been expected under the circumstances, compel [R_____ J_____ P_____], a female not his wife, to submit to sexual intercourse without her consent, and that said Royce Colon Patterson did then and there intentionally and knowingly compel [R_____ J_____ P_____] to submit to sexual in-

tercourse by threat of serious bodily injury to be imminently inflicted on [R_____ J_____ P_____]."

The appellant asserts that it is a proper interpretation of the indictment to read that the appellant might have compelled the complaining witness to submit to sexual intercourse with her husband. We find no merit to this assertion. Art. 21.11, Vernon's Ann.C.C.P. provides:

"An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment; and in no case are the words 'force and arms' or 'contrary to the form of the statute' necessary."

We find that the indictment is sufficient to charge the offense. The ground of error is overruled.

■ In ground of error number seven, appellant contends that the trial court abused its discretion in denying the appellant's motion for continuance. On June 26, 1978, prior to the presentation of evidence, the appellant filed a Motion for Continuance after the trial court reconsidered its ruling on the admissibility of the hair samples obtained from the appellant. At the first trial, the trial court overruled the appellant's motion to suppress the hair samples. On June 15, 1978 at a pre-trial hearing, the trial court changed its ruling and stated that the hair samples were not admissible. On the 26th day of June the trial court stated that it had reconsidered its ruling, and that it would reserve ruling until the issue was presented at trial. The appellant moved for a continuance on the ground that the ruling constituted surprise to the appellant, and that appellant was therefore not prepared to cross-examine the witness concerning this evidence.

A motion for continuance or postponement on the ground of surprise is addressed to the sound discretion of the trial court, and the failure to grant such motion is not error unless there is a showing of abuse of discretion. *Cooper v. State*, 509 S.W.2d 565 (Tex.Cr.App.1974); *Ford v. State*, 502 S.W.2d 160 (Tex.Cr.App.1973). The record reflects that the appellant had from the morning of June 26, 1978 until the afternoon of the 27th of June to prepare his cross-examination. After the direct examination of the DPS chemist, the court recessed for 15 minutes so that defense counsel could examine the chemist's hand-written work notes. The record reflects extensive cross-examination of the witness by defense counsel. The record from the first trial indicates that prior to May 23, 1978, the appellant's attorney went to Waco and examined the evidence and the report made by the chemist. We find that no abuse of discretion by the trial court has been shown. The ground of error is overruled.

In ground of error number eight, appellant contends that the trial court erred in refusing to allow defense counsel to ask the jury panel, during voir dire, the question, "Do you agree with the statement that's often made that it's more important for ten guilty people to go free than for one innocent person to be convicted?" The appellant contends that the refusal by the trial court denied him the right to intelligently exercise his peremptory challenges. The appellant relies on *Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App.1979). In *Mathis v. State*, supra, defense counsel was not allowed to ask the jurors questions pertaining to their feelings on the range of punishment and probation for the purpose of exercising peremptory challenges. We held that the failure to allow the questions amounted to an abuse of discretion.

The conduct of the voir dire examination must rest within the sound discretion of the court. *Mathis v. State*, supra; *Moore v. State*, 542 S.W.2d 664 (Tex. Cr.App.1976). The decision as to the propriety of any question is left to the discretion of the trial court and the only review will be for abuse of that discretion. *Battie v. State*, 551 S.W.2d 401 (Tex.Cr.App.1977). At trial, defense counsel stated that the question was an inquiry about the presumption of innocence. The record of the voir dire examination shows that defense counsel asked other questions concerning the presumption of innocence which were allowed. No abuse of discretion has been shown. The ground of error is overruled.

In appellant's final ground of error, he contends that the trial court erred in failing to grant his motion to quash the jury panel on the grounds that the statutory exemptions from jury service provided for in Article 2135, V.A.C.S., deny the appellant the right to trial by an impartial jury by the "effective exclusion, without justification of persons who are without question qualified to serve as jurors." The issue has already been addressed by the Court in *Johnson v. State*, 548 S.W.2d 700 (Tex.Cr.App.1977), and was decided adversely to appellant's position. The ground of error is overruled.

The judgment is affirmed.