**Brandon BOWLES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59178.**

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Nov. 5, 1980.

Louis Dugas, Jr., Orange, for appellant.

Jim Sharon Bearden, County Atty., and Michael W. Shuff, Asst. County Atty., Orange, Robert Huttash, State's Atty., Austin, for the State.

---

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for felony delivery of marihuana. Punishment was assessed at five years and appellant was placed on probation.

In his only ground of error appellant contends the trial court erroneously overruled his plea of former jeopardy. His argument is based on an earlier trial in which the jury was discharged when it was unable to reach a verdict. Specifically, appellant asserts the jury in that trial was discharged too soon, in violation of Art. 36.31, V.A.C.C.P. That statute provides:

"After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."

Appellant relies strictly on the second part of the statute, arguing that the jury, at the time it was discharged, had not "been kept together for such time as to render it altogether improbable that it can agree."

At the hearing on the motion for new trial following the second trial, counsel for appellant at the first trial testified that during a conference in chambers he requested the court to discharge the jury. In view of counsel's affirmative request we hold that the second part of Art. 36.31, supra, does not control disposition of this case.

 Under the first part of Art. 36.31, supra, a jury that cannot agree may properly be discharged if both parties agree. Although it has been held that this requires the personal consent of the defendant, and that counsel's consent is not sufficient, *Hip-*

*ple v. State*, 80 Tex.Cr.R. 531, 191 S.W. 1150, 1155, on motion for rehearing, and see *Davis v. State*, 144 Tex.Cr.R. 474, 164 S.W.2d 686, in this case appellant's counsel actually *requested* that the jury be discharged. In an analogous situation, regarding whether a mistrial created a jeopardy bar to subsequent prosecution, the court in *Rios v. State*, Tex.Cr.App., 557 S.W.2d 87, held the jeopardy protection was not violated by retrial where defense counsel had *requested* the mistrial, and Hipple v. State, supra, was found not dispositive. Similarly, in this case, the decision to discharge the jury was not initiated by the court, but was at the *request* of defense counsel. Since the court did not initiate the action to discharge, but simply acted on counsel's request, we hold it was not necessary for the court to secure appellant's personal consent.

We therefore hold that the first trial did not constitute a jeopardy bar to a second trial, and overrule the ground of error.

The judgment is affirmed.

CLINTON, Judge, dissenting.

In adjudicating procedural issues the duty, responsibility and function of the Judicial Department are to take statutory expressions of legislative judgment as it finds them as at least a starting point. Authority need not be cited for the most basic constitutional proposition that judges are to interpret, construe and apply pertinent statutes–they are not to make the law. The Legislative Department has provided but two situations in which a jury that cannot agree may be discharged by a trial court; today the Court engrafts on the statute a third. To this kind of judicial lawmaking I must dissent.

The record below reflects that in the initial trial of this cause to the jury, the State called two witnesses and the defense called three, all of whom were vigorously cross examined. The presentation of evidence by both sides constituted the better part of Tuesday, February 8, 1977 and Wednesday,

February 9, 1977. The jury received the court's charge at 11:10 a. m. on February 10, 1977 and deliberated for some fifty minutes before recessing for lunch. They deliberated an additional twenty–five minutes before they were brought into the courtroom at which time the following colloquy ensued:

THE COURT: I believe your note indicates that Mr. Melton is the Foreman?

MR. MELTON: Yes, sir.

THE COURT: You are Mr. Melton?

MR. MELTON: Yes.

THE COURT: You have indicated that you have not been able to agree, to this point, is that correct?

MR. MELTON: That is correct.

THE COURT: Do you feel like further deliberation would be fruitful? Is there any possibility that deliberating further would serve any purpose?

MR. MELTON: It doesn't seem so, Sir.

THE COURT: Have each of you expressed your own opinions and listened, and has everyone had their say?

MR. MELTON: Yes, sir.

THE COURT: Is the impasse so great you feel like it would–are you able to deliberate further; let me ask you that?

MR. MELTON: No, sir, I don't think so.

THE COURT: Would you step up to the bench, please.

After an off the record discussion between the court and counsel, the trial court announced its decision:

"I will *declare that you are hung*, and will discharge you. I thank you for your attention during the course of the trial..." [1]

Before his second trial appellant presented and the trial court heard his verified special plea of double jeopardy, contending that the first trial had been "improperly terminated" and setting out the pertinent timetable much as I have outlined it above. The only testimony came from trial counsel for appellant, called by the State as an adverse witness. As the State now sees the matter, the following testimony is material to our inquiry:

"Q: Do you recall when we were first presented with a note from the Jury as to them being deadlocked seven to five?

A: Yes.

Q: Do you recall that it was seven to five for 'guilty'?

A: Yes, that's correct.

Q: And you recall shortly after that being in Chambers–right at that time being in Chambers–did you ask the Court to inquire of the Jury where, in all probability, they would not be able to reach a verdict, or the standard question to the jury?

A: I believe I did... My memory is hazy on that.

Q: Do you recall that the Jury was, in fact, brought into the Courtroom and that question put to the Jury?

A: Yes.

Q: And do you have any recollection, or did you, ask the Court to inquire further of other members of the Jury, as to whether they would be able, in all probability, to reach a verdict?

A: I have no recollection of that.

\* \* \* \* \* \*[2]

Q: ... Did you, at any time, ask the Court to have the Jury taken back to

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. Our burden in drawing factual meaning from this colloquy is made heavier by phrasing questions in terms of "recall" and "recollection." One may or may not remember an event that actually occurred, so a statement as to his recollection does not tell whether the event did take place. The omitted question and answer are illustrative:

"Q: You're not saying you didn't, you just don't recall whether you did?

the Jury room for further deliberation on the case?

A: I did not.

Q: And do you recall, in Chambers, when the matter first came up, asking that the Jury go ahead and be brought in, and to be discharged?

A: Yes.

Q: Do you recall lodging any type of objection that the Jury be discharged?

A: No, I did not.

\* \* \* \* \* \*

Q: But you in no way objected to the Court discharging the Jury?

A: No."

The State also requested the trial court to take judicial notice of the filed papers and records of the first trial that would reflect "a fairly short trial" and, as I understand the statement, that the State did not agree with the discharge of the jury.[3] The plea was denied by written order.

Though the parties cite us cases construing the constitutional jeopardy provisions, I am satisfied that this case turns on the meaning of our statute that treats the matter, Article 36.31, V.A.C.C.P., in these terms:

"After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."

Thus, whatever the case when a mistrial is granted at the instance of an accused for some asserted trial error,[4] this discharge of a deadlocked jury is contemplated by the statute in but one or the other described situations: the parties consent or the trial court determines the "altogether improbability" of agreement. The first instance is for the desired protection of the respective rights of parties, according to their rights, where, as here, one party believes it advantageous to insist on more deliberation. The second situation, however, regarding the public interest in completed trials as paramount, takes discharge of reportedly disputatious jurors out of the hands of the parties,[5] requiring instead a judicial determination of futility in continued deliberations by them. The statute does not contemplate a third situation that the Court now creates—a naked request of counsel for the accused—and plainly no considerations of public policy are served in the doing. Indeed, quite valid public interests are defeated by the Court's creation.

A: Right."
The concern usually is not with the recall of the witness but with the facts of the matter.

3. That understanding is confirmed by a remark made by the prosecutor during the subsequent hearing on motion for new trial that "it was the defendant through his attorney, who requested a mistrial over the State's objections." The rejoinder from appellant was: "In any event, the Court is under no obligation ... to listen to me as an attorney in the case. \* \* \* So, this is a matter of the Court's discretion and not mine."

4. The State cites to this Court DeYoung v. State, 274 S.W.2d 406, 407 (Tex.Cr.App.1954) and Rios v. State, 557 S.W.2d 87 (Tex.Cr.App. 1977) and asks us to see Vaccaro v. United States, 360 F.2d 606, 607 (5 Cir. 1966) and United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) and, recognizing that each is based on other than jury disagreement, submits they support "the correct rule

that a defendant cannot assert jeopardy after a trial court grants his specific request to declare a hung jury and to discharge them." Below, however, the State saw the problem differently and urged on the trial court as "important" to its position the holding of the Court in Willis v. State, 518 S.W.2d 247 (Tex.Cr.App.1975) that affirmed the judicial determination to discharge a deadlocked jury–a request from the accused not being in the case.

5. So it is that the attitude of the accused is of little moment, and the contention by the State that silence is acquiescence is beside the point—just as has been held in O'Brien v. State, 455 S.W.2d 283, 284 (Tex.Cr.App.1970), relying on Davis v. State, 144 Tex.Cr.R. 474, 164 S.W.2d 686 (1942), that "an accused was under no duty to object to the discharge of the jury..." Acquiescence is not to be construed as "an agreement," Davis v. State, supra at 688.

It is well settled that a trial court, in its discretion, may dismiss a jury when it has been kept together long enough to make it *"altogether improbable"* that the jury can agree on a verdict. *Muniz v. State*, 573 S.W.2d 792, 794 (Tex.Cr.App.1978); Article 36.31, V.A.C.C.P. It is similarly settled that the exercise of discretion in declaring a mistrial will be judged by the amount of time the jury deliberates in light of the nature of the case and the time that it took the parties to put on the evidence. *Muniz v. State*, supra; *Beeman v. State*, 533 S.W.2d 799 (Tex.Cr.App.1976); *O'Brien v. State*, 455 S.W.2d 283 (Tex.Cr.App.1970). As this Court noted in the early case of *Powell v. State*, 17 Tex.Cr.R. 345 (1885):

> "This discretion, then, must be measured by the time they are kept together since the improbability that they will agree is made to depend upon the time .... Reasonable time is not the measure of his [judge's] discretion.... The jury must have been kept together for such time as to render it altogether improbable that they can agree.... Not that they would, but that they *could* agree."

*Id.* [Emphasis in original.]

The court in *Powell* went on to note that the trial judge abused his discretion in discharging the jury after they had only deliberated for three and one half hours. See also *O'Brien v. State*, supra, (jury deliberated one hour and ten minutes); *Beeman v. State*, supra, (two hours); *Grigsby v. State*, 257 S.W.2d 110 (Tex.Cr.App.1953) (one hour and forty–five minutes).

In those cases when this Court has not found an abuse of discretion where the trial court dismisses a deadlocked jury, the time that such a jury spent deliberating was, to say the least, somewhat longer than the jury in the case before us. In *Satterwhite v. State*, 505 S.W.2d 870 (Tex.Cr.App.1974) the jury deliberated three times as long as was required to present the evidence; in *Willis v. State*, 518 S.W.2d 247 (Tex.Cr.App. 1975) the jury deliberated some three times as long as it took both parties to put on

their respective cases; in *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App.1974) the jury deliberated for almost thirteen hours over a three day period after the evidence was presented in less than one day. On the other hand, in *Muniz v. State*, supra, instructing a jury which had deliberated for only two and one half hours before returning without an answer to question number two in the punishment phase of a capital murder trial, see Article 37.071, V.A. C.C.P., to continue its deliberations, was proper. Given this short time to deliberate and considering the fact that the testimony required some six days to put on, this Court found that the trial judge did not abuse his discretion in *not* dismissing the jury and sending them back for further deliberation.

While length of deliberation is the benchmark for judicial determination of altogether improbability, so strong is the public interest at stake that some procedural mechanisms have been invented to ensure that interest is protected.

Thus, in deciding *Beeman v. State*, 533 S.W.2d 799 (Tex.Cr.App.1976) the Court critically alluded to the fact that the trial court "questioned only the foreman" concerning the state of deliberations. Now, however, our recent disposition of *Patterson v. State*, 598 S.W.2d 265 (Tex.Cr.App.1980) is more instructive in this regard.

After the jury in that case returned to the courtroom, the foreperson advised the trial court that they were divided 7–5 and were unable to reach an agreement. Unlike the trial judge in the case at bar, the trial judge in *Patterson* inquired of the *entire panel* if further deliberations would prove fruitful:

> "Let me ask the entire panel, how many of you think you might reach a verdict if you deliberated longer? Do any of you think you might?"
> [Jury panel responds in the negative.]
> "If there are any of you who think you might reach a verdict if you deliberated longer, would you raise your hand? Let the record show there are no hands."

\*　　\*　　\*　　\*　　\*　　\*

" . . . let me ask the question that I asked previously, but another way. How many of you think you will not reach a verdict if you deliberate longer, would you raise your hands? How many of you think you will not reach a verdict if you stay longer. Okay. Let the record show there is [sic] eleven hands up. All right. I will declare a mistrial, and discharge the Jury."

It is clear that the inquiry in *Patterson* was more calculated to show that further deliberations by the jury–after inquiring of the entire panel–would prove fruitless. The trial court in the case at issue did not make such an inquiry and was content to probe but cursorily just the foreperson in an attempt to find if further deliberations would yield a verdict. Such inadequate inquiry after the relatively brief period that a jury deliberates is one factor in our holdings that a trial court abuses its discretion in discharging a jury.

Another technique that has impressed this Court was applied in *Satterwhite v. State*, 505 S.W.2d 870 (Tex.Cr.App.1974). Amid other developments the trial court there, having been informed of jurors' inability to reach a verdict, instructed them in open court:

> "You should endeavor to reach a verdict if at all possible, and the law provides that the jury shall be kept together for such a time as to render it altogether improbable that it can agree."

The trial court below pretermitted any such instruction in its colloquy with the foreperson. While it may not dynamite a jury in every case–indeed, the jury in *Satterwhite* was not shaken from its deadlock–yet an instruction is a worthwhile attempt to save the trial from being aborted. Moreover, a jury sent back for further deliberation which still cannot agree demonstrates an altogether improbability that it ever could. See *Powell v. State*, 17 Tex.Cr.R. 345 (1885), *Brown v. State*, 508 S.W.2d 91, 93 (Tex.Cr. App.1974), *O'Brien v. State*, supra, *Satterwhite v. State*, supra.

It has also been suggested that an order making findings of fact may explain and support a declared mistrial. *Grigsby v. State*, 257 S.W.2d 110 (Tex.Cr.App.1953); *Boone v. State*, 506 S.W.2d 227, 229 (Tex.Cr. App.1974).

Nevertheless, these mechanisms being but precautions in exercising discretion, as already pointed out *ante*, the ultimate test remains the amount of time the jury deliberates considered in light of the nature of the case and the evidence presented. According to the statute, the State having withheld its consent to the requested mistrial, that the trial court determined to make inquiry of the status of things at the instance of counsel for the accused does not relieve the trial court of responsibility exercising its discretion in deciding whether the jury "has been kept together for such time as to render it altogether improbable that it can agree." From its inadequate inquiry the trial court aborted the trial too early. We serve no public interest I am able to perceive by saying that abuse of discretion is excusable because counsel for a party initiated its exercise.

I respectfully dissent.