COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-187-CR

 

HENRY DARREN SHOOK                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------      

I.  Introduction

Appellant Henry Darren Shook
appeals his conviction, ten-year probated sentence, and $10,000 fine for
indecency with a child.  In four issues,
appellant complains that the trial court erred by not reading the indictment to
the jury and by declaring a mistrial when the jury was unable to reach a
unanimous verdict on the second count and that the evidence is legally and
factually insufficient to support the jury=s verdict on the first count. 
We affirm.








 

II.  Background Facts

K.A., a thirteen-year-old
girl, lived in Oklahoma with her mother, Kathy A., her stepfather, and her
younger sister, J.A.  K.A. and J.A.
usually spent time during holidays and summers with their aunt, Lena Morris-Shook,
and their uncle, appellant, in Flower Mound, Texas.

In December 2002, while K.A.=s family visited the Shooks for the holidays, appellant lay on the
couch with K.A. and then allegedly rubbed her leg and moved his hand towards
her inner thigh.  The next month, Kathy
noticed that K.A.=s behavior
changed.  K.A. withdrew from her friends,
she did not want to participate in cheerleading or most sports, and her grades
worsened.  K.A. also began to avoid the
Shooks at family gatherings.

In July 2003, K.A. and J.A.
spent a week with the Shooks.  One night
during this visit, appellant allegedly watched a pornographic video while he
was alone with the girls.  Appellant
allegedly put his fingers in K.A.=s mouth, got under a blanket with her, kissed her, lifted up her
shirt, and licked and sucked on her breast. 
Appellant also allegedly pulled K.A.=s panties down and penetrated her vagina with his fingers.  That same night, K.A. thought she heard a dog
entering her room; instead, appellant allegedly crawled into the room on his
hands and knees and tried to kiss her. 








During the same week that
summer, K.A. and J.A. went camping with the Shooks.  K.A. swam out too far in the lake, and
appellant had to swim out to get her. 
When K.A. climbed on his back, appellant allegedly slipped his fingers
underneath her swimsuit and touched her genitals.  Later that night in the Shook=s camper, appellant allegedly grabbed K.A.=s hand, put it down his pants, and tried to make her Agive him a hand job.@  Appellant also allegedly slid
his hand down K.A.=s pants and
touched her genitals.

In spring 2004, K.A. told
Kathy about the abuse, and Kathy reported it to the police that summer.  Consequently, appellant was charged with one count
of indecency with a child and with one count of sexual assault of a child.  The jury found him guilty of indecency with a
child but was not able to reach a unanimous verdict on the sexual assault of a
child count.  The trial court granted a
mistrial on that count but entered a judgment on the indecency with a child
count, fined appellant $10,000, and sentenced him to ten years= imprisonment, probated for five years.  This appeal followed.

III.  The Trial Court=s
Failure to Read the Indictment

 








In his first issue, appellant
claims that the trial court erred by failing to read the indictment to the jury
before he pled not guilty.  Section
36.01(a)(1)-(2) of the code of criminal procedure requires that the indictment
be read to the jury before the defendant enters his plea.  See Tex.
Code Crim. Proc. Ann. art. 36.01(a)(1), (2) (Vernon 2007).  This provision is mandatory.  See Warren v. State, 693 S.W.2d 414,
415 (Tex. Crim. App. 1985).  The
rationale behind this provision is that until the charging instrument is read
to the accused and he pleads to it, no issue is joined upon which to try him.  Ex parte Sewell, 742 S.W.2d 393, 395
(Tex. Crim. App. 1987) (op. on reh=g).  

Error that results from not
reading the indictment and not entering a plea can be cured at trial if raised
by a party.  See Warren, 693
S.W.2d at 416.  But when the error is
discovered after trial, the error is preserved by means of a motion for new
trial, bill of exception, or motion to arrest judgment.  See id.

We agree with the State that appellant failed to object at trial to
the trial court=s alleged
failure to read the indictment and failed to raise this issue in his motion for
new trial.  To preserve a
complaint for our review, a party must have presented to the trial court a
timely request, objection, or motion that states the specific grounds for the
desired ruling if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  








By failing to alert the trial court to his complaint, appellant has
waived this issue on appeal.  See
Cantu v. State, 939 S.W.2d 627, 646 (Tex. Crim. App. 1996) (appellant
waived error by failing to object
when trial judge did not read indictment to jury), cert. denied, 522 U.S. 994 (1997).  Accordingly, we overrule
appellant=s first
issue.  

IV.  Sufficiency of the Evidence

In his second and third
issues, appellant contends that the evidence is legally and factually
insufficient to support the jury=s verdict that he engaged in sexual contact with K.A. (Count I).  A person commits indecency with a child if,
with a child younger than seventeen and not the person=s spouse, the person engages in sexual contact with the child, or with
intent to arouse or gratify the sexual desire of any person, exposes any part
of the person=s genitals,
knowing the child is present.  Tex. Penal Code Ann. ' 21.11(a)(1), (2)(A) (Vernon 2003). 
ASexual contact@ means any
touching by a person of a child=s genitals, including through clothing, with the intent to arouse or
gratify the sexual desire of any person.  Id. ' 21.11(c); see Santos v. State, 961 S.W.2d 304, 308 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d).

 

 

 








A.  Standards of Review

1.  Legal Sufficiency

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

2.  Factual Sufficiency

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). 

 








B.  Analysis 

In December 2002, K.A. was
thirteen years old and lived in Kingfisher, Oklahoma.  She was an outgoing girl who participated in
basketball, softball, track, 4-H, and cheerleading.   

In 2002, K.A.=s family spent Christmas Eve at the Shooks= home and Christmas Day at K.A.=s grandfather=s home.  K.A. testified that on Christmas Eve, she and
J.A. were in the Shooks= living room
watching movies while the other family members cooked dinner.  At some point, appellant came into the living
room, lay down on the couch with his back to K.A., reached back, rubbed K.A.=s leg, and moved his hand towards her inner thigh.  Kathy testified that when K.A. later told her
about the inappropriate touching on Christmas Eve, K.A. had said that appellant
actually touched her breast and put his hand between her legs.  K.A.=s aunt, Lena, testified that she had seen appellant and K.A. lie on
the couch together before and that it made her feel Aweird.@  Appellant denied touching K.A. while on the
couch but stated, AI=m sure we probably were on the sofa at the same time at any given point.@  








Kathy testified that she first began to see a change in K.A.=s behavior that next month. 
Specifically, K.A. did not get along with people as well as she had
before, she withdrew from friends and became a generally withdrawn person, and
she no longer wanted to participate in cheerleading or most sports.  K.A.=s grades fell from AAs@ and ABs@ to ABs@ and ACs.@  In the past, K.A. would normally spend a lot
of time with the Shooks, but she began to avoid them at family gatherings.

In July 2003, K.A. and J.A. spent approximately one week with the
Shooks.  K.A. testified that she stayed
at the Shooks= home and
then the group had gone camping a few days later, but Lena and appellant
testified that they had gone camping first and then stayed at their home in
Flower Mound.  While in appellant=s living room one night, K.A. was on the floor near the fireplace, and
appellant was in a chair near K.A.; Lena had gone to bed early.  K.A. testified that while appellant watched a
video of Agraphically
nude people,@ he dropped
his hand near K.A. and put his fingers in her mouth. 

K.A. testified that after she spit out appellant=s fingers, appellant got a blanket, lay on the floor next to her, and
covered them both up.  Appellant tried to
kiss K.A. on the mouth, and he lifted up her shirt and licked and sucked on her
breast.  K.A. testified that appellant
slowly pulled her panties down and then Ahis head and everything disappeared.@  K.A. believed that appellant
had penetrated her vagina with his fingers, and she felt appellant=s facial hair against the side of her legs.  Appellant suddenly got up and went to the
bathroom, and K.A. got dressed and went upstairs to a spare bedroom to go to
sleep.

 








That same night, K.A. thought she heard a dog coming into the bedroom,
but when she looked, she saw appellant crawling into the room on his hands and
knees.  Appellant crawled beside the bed
and tried to kiss K.A., but she told him that she was tired and to go away. 

The following day, K.A. told a neighbor that appellant had entered her
bedroom the night before.  She did not
tell the neighbor any other details because other children came into the
room.  The neighbor told Lena what K.A.
had said, and that night, Lena asked K.A. about the incident.  However, K.A. did not tell Lena about the
inappropriate touching because appellant was watching the conversation, and she
felt intimidated by his stare.

Later that night, Lena confronted appellant about entering K.A.=s bedroom.  Appellant told Lena
that he had heard something and went to check on K.A.  Lena had a Agut feeling@ and told
appellant to wake her up in the future if he heard something from the girls. 

Although K.A. testified that she and J.A. told Lena about appellant
watching porn in front of them, Lena denied the conversation.  However, both Lena and appellant admitted
that appellant kept porn in their house. 
Although appellant stated that the videos were kept in their bedroom,
Lena stated that they kept the videos in the living room and that one was usually
in the VCR player. 








During that same week in July 2003, K.A. and J.A. went camping with
the Shooks.  Once, K.A. swam too far out
in the lake, and appellant went out to get her. 
K.A. climbed on appellant=s back, and she thought he was putting his arms around her legs to
hold her; instead, he slipped his fingers underneath her swimsuit and touched
her genitals. 

Inside the Shooks= camper that same night, appellant dropped his arm onto K.A.=s bed and Abegan to
feel around.@[2]  K.A. testified that appellant
took her hand, put it down his pants, and tried to make her Agive him a hand job.@ Appellant also slid his hand down K.A.=s pants and tried to put his fingers inside of her vagina, but she
rolled over.  However, K.A. testified
that appellant=s fingers
penetrated her vagina once or twice that night. 
Appellant testified that he never touched K.A., that the beds were on
opposite ends of the camper, and that the camper would rock and the dogs would
wake up if there was any movement.  Lena
testified that, at some point, appellant became more interested in visiting
K.A. and J.A. in Oklahoma than he had in the past. 








During Easter of 2004, K.A.
went to visit her cousin Alexandria in Denton, Texas.  While watching a horror movie with Alexandria
and Alexandria=s boyfriend,
K.A. went into the bathroom.  Alexandria,
worried that K.A. had been gone for a while, followed her in there and saw that
K.A. was crying. Alexandria, surprised because K.A. was usually Astrong-willed@ and Ahappy-go-lucky,@ asked K.A.
what was wrong.  Initially K.A. was
reluctant to tell Alexandria what was bothering her, but after Alexandria
continued to question her, K.A. told Alexandria that appellant had sexually
molested her.  Specifically, K.A. told
Alexandria about appellant=s entering her bedroom and touching her in the camper.  She also told Alexandria that appellant had
placed his hands into her Avagina area.@  Alexandria testified that K.A. was crying
hysterically throughout the conversation, and because she was so upset,
Alexandria did not press for more details.








At some point in March 2004,
Kathy told K.A. that appellant and Lena were getting a divorce, and she was
surprised at how passive K.A. was to the news. 
That same night, K.A. told Kathy that appellant had inappropriately
touched her.[3]  K.A. only told Kathy about the Christmas Eve
2002 incident; Kathy did not find out about the July 2003 abuse until after
K.A. had spoke with a counselor.  Shortly
after Kathy reported the abuse to the authorities in July 2004, K.A. went to
speak with a counselor at the Northwest Behavioral Center in Kingfisher,
Oklahoma.  K.A. told the counselor that
during the camping trip, appellant touched her and tried to make her hold his
penis.

Appellant points out that
some of K.A.=s testimony
conflicted with statements made by other witnesses.  Appellant also notes that K.A. told different
versions of her story to several different people, including Kathy and
Alexandria.  Appellant also denies ever
touching K.A. in an inappropriate manner. However, K.A. consistently stated
that appellant inappropriately touched her while at the campsite and at his
house in July 2003.  Further, K.A. became
more withdrawn, less interested in sports and cheerleading, and performed worse
in school immediately after the first abuse in December 2002.  








Equally important, it is up
to the fact finder to reconcile contradictory testimonial evidence because
resolution of the conflict Aoften turns on an evaluation of the credibility and demeanor, and
[the] jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  After reviewing the evidence in a
light most favorable to the verdict, we conclude that any rational juror could
have found the essential elements of indecency with a child beyond a reasonable
doubt.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693.  Further, the evidence supporting the
conviction is not so weak, nor the contrary evidence so overwhelming, that the
jury=s verdict is clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414-15,
417.  Therefore, we hold that the
evidence is both legally and factually sufficient to support the jury=s finding.  Accordingly,
we overrule appellant=s second and
third issues.  

V.  The Sua Sponte Mistrial

In his fourth issue,
appellant asserts that the trial court erred in declaring a mistrial on the
aggravated sexual assault count when the jury was unable to reach a verdict on
that count.  In reviewing a trial court=s ruling on a motion for mistrial, we apply an abuse of discretion
standard of review and will uphold the ruling if it was within the zone of
reasonable disagreement.  See Wead v.
State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  








A court may discharge a jury
under circumstances Awhere [the
jury] has been kept together for such time as to render it improbable that they
can agree.@ Tex. Code Crim. Proc. Ann. art.
36.31.  The length of the deliberation
required is left to the discretion of the trial court.  DeLuna v. State, 711 S.W.2d 44, 48 (Tex.
Crim. App. 1986); Husain v. State, 161 S.W.3d 642, 645 (Tex. App.CSan Antonio 2005, pet. ref=d).  In evaluating the propriety
of a mistrial, the length of time spent in deliberations as well as the
specific circumstances of the case should be examined.  Patterson v. State, 598 S.W.2d 265, 268
(Tex. Crim. App. [Panel Op.] 1980).  However,
a trial court must consider and rule out less drastic measures before declaring
a mistrial.  Brown v. State, 907
S.W.2d 835, 839 (Tex. Crim. App. 1995). 
If a trial court declares a mistrial despite available less drastic
measures, there is no manifest necessity and we will find an abuse of
discretion.  Id. 

After four hours of testimony
and almost seven hours of deliberations, the jury returned a verdict of guilty
on the indecency count but remained deadlocked on the aggravated sexual assault
count.  The jury requested a recess until
the next morning because one juror had a child at home with no
supervision.  Appellant refused to agree
to the overnight recess and instead argued that deliberations should continue
into the night.  The following discussion
then ensued:

THE COURT: It is now 8:30. The jury sent this
last note out at 8:00 p.m. They began deliberation at 1:00.  That=s almost seven hours of
continuous deliberation, take away 45 minutes or an hour when we were trying to
discover what to do on one of their other notes.  They have deliberated in excess of six
hours.  The total testimony took no more
than perhaps four hours.

 

. . . .

 

THE COURT: The last note says, Awe
the jury, are unable to come to an [agreement] on the second charge.  Can we recess until the morning to give the
matter further thought?  Extenuating
circumstances of having a child at home alone have been brought to our
attention.@ That=s
signed by Dandra E. Smith, I believe.

 

THE BAILIFF: That=s the foreman.

 








THE COURT: It is my opinion that under the
circumstances, causing this particular jury to be sequestered will not lead to
justice. If there is someone on that jury that has a child alone at home, I do
not believe that sequestering themCthat juror being unable to
take care of a child at home will cause undue pressure and influence on the
juryCon
that particular juror.

 

[THE STATE]: Your Honor if I may?

 

THE COURT: Please.

 

[THE STATE]: Would it be possibleCI understand
[Defense Counsel] does not want the jury to separate and he wants them to
continue to deliberate tonight. Would it be possibleC 

 

THE COURT: Deliberation is about over. There will
be no more deliberation tonight. They have deliberated long enough.  I do not believe in holding people in a
little room until somebody cracks and makes a decision one way or the other.

 

[THE STATE]: I guess my only suggestion would be
since only one jurorB

. . .  Can we go off the record?

 

THE COURT: No.

 

[THE STATE]: Since one juror has indicated they
have a child at home, could we at least recess and give this person an
opportunity to find out whether or not they can make other arrangements before
we go any further?  ItCmaybe
it=s a
simple matter of they have been deliberating in the jury room and have not have
an opportunity to call family members or friends and make arrangements for this
child.

 

THE COURT: Can the State give me any legal reason
I cannot declare a mistrial because of a hung jury under these circumstances?

 








[THE STATE]: No. If that is your decision as a
judge in the best interest of justice, that=s your call.  You know the legal test, and the State
certainly sees Your Honor=s
point and knows that you in communicating with your bailiff have seen the jury
during the breaks and things like that, so I respect your opinion, Your Honor.

 

THE COURT: Bring the jury back in.

 

Following this discussion, the trial court
accepted the verdict on the indecency with a child count and declared a
mistrial on the aggravated sexual assault count, and appellant objected.

Other alternative measures
were examined by the court; however, appellant rejected the trial court=s suggestion to dismiss the jurors for the night.[4]  Further, the trial court felt that
sequestering the jury for the night would not lead to justice because it would
cause undue pressure and influence on the juror whose child was home
alone.  Thus, the trial court was left
with the least drastic option available. 
See Wead, 129 S.W.3d at 129. 









Appellant also argues that the trial court violated article
37.07 of the code of criminal procedure by allowing the jury to return a Apartial verdict@ when it could not
reach a unanimous decision on Count II.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 1(c) (Vernon
2006).  We disagree.  Although
the jury did not reach a unanimous verdict on Count II, it did reach a
unanimous verdict on Count I, and the trial court appropriately entered a
general verdict on Count I.  Further, the
trial court had discretion to grant a mistrial on Count II and discharge the
jury when it discovered that a juror had to return home to care for her
child.  See Husain, 161 S.W.3d at
647 (affirming the trial court=s acceptance of a
guilty verdict on one count and the declaration of a mistrial on a second count
where the jury deliberated for sixteen hours in a trial that lasted two and
one-half days).

Because the trial court did
not abuse its discretion by declaring a mistrial, we overrule appellant=s fourth issue.

VI.  Conclusion

Having overruled appellant=s four issues, we affirm the trial court=s judgment.  

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

 

DELIVERED: June 21, 2007











[1]See Tex. R. App. P. 47.4.





[2]K.A.=s bed
was located next to appellant and Lena=s bed, but was a little lower
to the ground. 





[3]Kathy
and her husband chose not to report the incident until July 2004  so that K.A. would not get involved in the
divorce proceedings.





[4]See Tex. Code Crim. Proc. Ann. art. 35.23
(Vernon 2006) (providing that a trial court may, on its own motion or on the
motion of either party, after the charge has been given, order that the jury
not be allowed to separate).