Appellee=s Motion for Rehearing Overruled; Affirmed In Part; Reversed
and Remanded In Part; Opinion of August 17, 2004, Withdrawn, and Substitute
Opinion filed October 21, 2004









Appellee=s Motion for Rehearing Overruled; Affirmed In Part;
Reversed and Remanded In Part; Opinion of August 17, 2004, Withdrawn, and
Substitute Opinion filed October 21, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00917-CR

_______________

 

WILLIAM RICHARD CHAPMAN, JR., Appellant

 

V.

 



THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 56th District Court

Galveston County, Texas



Trial Court Cause No. 01CR1522

 



 

S U B S T
I T U T E   O P I N I O N

Appellee=s Motion
for Rehearing is overruled.  Our original
opinion issued on August 17, 2004 is withdrawn, and we issue this
substitute opinion.








Appellant,
William Richard Chapman, Jr., was charged with aggravated sexual assault of
K.M.F, his six-year-old step-daughter. 
In appellant=s first trial, the court sua sponte concluded
proceedings by announcing a mistrial because the jury was deadlocked.  In appellant=s second trial, the jury found him
guilty and assessed punishment at eighty-eight years= confinement in the Texas Department
of Criminal Justice, Institutional Division. 
In four issues, appellant contends the trial court erred by (1) ordering
a mistrial of his first trial, (2) admitting improper outcry testimony
regarding the charged offense during the guilt/innocence phase of his second
trial, (3) allowing a witness to interpret another person=s communication concerning an
extraneous offense during the punishment phase of his second trial, and (4)
admitting improper outcry testimony regarding the extraneous offense during the
punishment phase.  We affirm the guilty
verdict but reverse and remand for a new trial on punishment.

I.  Mistrial

In his
first issue, appellant contends the trial court erred in sua sponte ordering
a mistrial after the jury deliberated from 6:00 p.m. until midnight on a Friday
night without reaching a verdict.[1]  A trial court Amay in its discretion discharge [the
jury] where it has been kept together for such time as to render it altogether
improbable that it can agree.@  Tex. Code Crim. Proc. Ann. art. 36.31
(Vernon 1981); see Ellis v. State, 99 S.W.3d 783, 787 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (recognizing the length of time
the jury may be held for deliberation rests in the trial court=s discretion).  Whether the trial court abused its discretion
in declaring a mistrial is determined by the amount of time the jury
deliberates, considered in light of the nature of the case and evidence.  Beeman v. State, 533 S.W.2d 799, 800B01 (Tex. Crim. App. 1976); Nelson
v. State, 813 S.W.2d 651, 653 (Tex. App.CHouston [14th Dist.] 1991, no pet.).








However,
here, appellant does not challenge the length of time the jury
deliberated.  Instead, he merely
complains that the jury deliberated at night. 
He asserts that it was highly unusual and unfair for the trial court to
compel deliberations at night.  He also
suggests the nighttime deliberations caused the deadlock because the jurors
were probably exhausted but might have reached a verdict if they had been
allowed to continue deliberating on another day.  However, we have found no authority
prohibiting deliberations at night. 
Further, we have found no authority requiring the trial court to
consider the time of day that the jury deliberated when deciding whether to
order a mistrial.  Finally, there is no
indication the nighttime deliberations caused the deadlock.  To the contrary, as the night progressed, the
jury sent various requests to the trial court indicating it was still
considering evidence despite the late hour. 
It was only after the jury twice said it was deadlocked A8-4@ that the trial court ordered the
mistrial.  Accordingly, the trial court
did not abuse its discretion in ordering the mistrial.  Appellant=s first issue is overruled.

II.  Outcry Testimony
Regarding Charged Offense








In his
second issue, appellant contends the trial court erred in admitting outcry
testimony from Clarence Grayson, K.M.F.=s grandfather, and Raytwan Grayson,
K.M.F.=s father, regarding the charged
offense in the guilt/innocence phase of his second trial.  Article 38.072 of the Texas Code of Criminal
Procedure created an Aoutcry exception@ to the hearsay rule in prosecutions
for sexual offenses committed against a child twelve years of age or
younger.  See Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon Supp. 2004B05).  Article 38.072
provides that outcry testimony from the first adult (other than the defendant)
to whom the child made statements describing the alleged offense will not be
inadmissible because of the hearsay rule if certain requisites are met.[2]  Id. The trial court has broad
discretion to determine which of several witnesses is an outcry witness, and we
will not disturb its decision absent a clear abuse of discretion.  See Garcia v. State, 792 S.W.2d 88, 92
(Tex. Crim. App. 1990); Hayden v. State, 928 S.W.2d 229, 231 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d).  An abuse of discretion will not be found
unless the trial court=s decision is outside the zone of reasonable
disagreement.  See Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Tear v. State, 74 S.W.3d 555,
558 (Tex. App.CDallas 2002, pet. ref=d).

A.        Clarence=s Testimony

First,
appellant contends that the trial court abused its discretion by admitting
outcry testimony from Clarence Grayson. 
Appellant asserts the proper outcry witness was Katina Frank, K.M.F.=s mother, because she was the first
person to whom K.M.F. made statements about the offense.  We agree.

Before
appellant=s second trial, the trial court held
a hearing at which it considered testimony from Katina and Clarence to
determine who was the proper outcry witness.[3]  Katina testified that K.M.F. told her about
the offense A[p]robably the end of March,
beginning of April, but no later than May@ of 2001.[4]  D.F., K.M.F.=s brother, first told Katina that
appellant had been Afreaking@ K.M.F.  Katina then
asked K.M.F. about this allegation. 
K.M.F. said that appellant called her into the Aback room@ of their home, made her lie on a
couch, put lotion on his Aprivate part,@ and tried to Astick@ his Aprivate part@ in her Abehind.@[5] 
To Katina=s knowledge, she was the first adult to whom K.M.F. reported
the offense.








Clarence
testified that K.M.F. told him about the offense between April 3 and April 5,
2001.  He and Raytwan had taken K.M.F. and
D.F. to Kansas City for spring break. 
During the trip, D.F. repeatedly urged K.M.F. to tell Clarence Awhat happened.@ 
When Clarence asked what they were talking about, D.F. said that
appellant had been Afreaking@ K.M.F.[6]  Clarence asked K.M.F. if that was true.  She replied, AHe=s been freaking on me and my sister.@ 
Clarence took K.M.F. aside and asked, ADid he uses [sic] his pee pee?  The proper word is penis.@ 
K.M.F. replied, AHe used his penis.@ 
Most significantly, Clarence asked why K.M.F. did not tell her mother,
and she replied, AI did.@ Clarence asked when she told her mother.  K.M.F. responded either Aawhile back@ or a Afew days ago.@

Based on
this testimony, the trial court allowed Clarence to be designated as the outcry
witness because he could recall a date certain that K.M.F. told him about the
offense, while Katina could only say that K.M.F. told her about the offense
between March and May of 2001.  However,
article 38.072 contains no requirement that a witness provide a date certain on
which the child reported the offense to qualify as the outcry witness.  See Tex.
Code Crim. Proc. Ann. art. 38.072. 
Rather, article 38.072 allows testimony from the first adult to
whom the child made statements about the offense.[7]  See id. art. 38.072 ' 2(a).  Although Katina could not provide a date
certain, Clarence=s testimony established that Katina was the first
adult to whom K.M.F. made statements about the offense. Therefore, the trial
court=s determination that Clarence, not
Katina, was the proper outcry witness was outside the zone of reasonable
disagreement.  See Weatherred, 15
S.W.3d at 542; Tear, 74 S.W.3d at 558. 
Accordingly, the trial court abused it discretion in admitting Clarence=s outcry testimony.








B.        Harm Analysis

Having
found that the trial court abused its discretion in admitting Clarence=s outcry testimony, we must determine
whether the error is reversible.  See Tex. R. App. P. 44.2(b).  The admission of inadmissible hearsay
constitutes nonconstitutional error, and it will be considered harmless if we,
after examining the record as a whole, are reasonably assured that the error
did not influence the jury verdict or had but a slight effect.  See id.; Garcia v. State, 126
S.W.3d 921, 927 (Tex. Crim. App. 2004); Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998); Drew v. State, 76 S.W.3d 436, 459 (Tex.
App.CHouston [14th Dist.] 2002, pet. ref=d).[8]  Likewise, improper admission of evidence is
not reversible error if the same or similar evidence is admitted without
objection at another point in the trial.  See Mayes v. State, 816 S.W.2d 79, 88
(Tex. Crim. App. 1991); Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim.
App. 1999).  After examining the record, we
are reasonably assured that the improper admission of Clarence=s testimony did not influence the
jury verdict, or had but a slight effect, because the same or similar evidence
was admitted without objection elsewhere at trial.  








First,
K.M.F. testified without objection regarding the offense.  In fact, her account was more detailed than
Clarence=s testimony.[9]  K.M.F. testified that appellant called her
into their living room.  Pursuant to his
instruction, K.M.F. lay face down on the couch. 
Appellant removed his clothes and pulled down K.M.F.=s shorts.  He also held her hands behind her back.  He then put his Afront part@ inside her Abottom part@ twice, and it Ahurted.@ 
However, K.M.F. could not say anything because appellant had placed a
sock in her mouth.

Further,
Dr. James Lukefahr, a pediatrician at the University of Texas Medical Branch,
testified without objection from the report on K.M.F.=s medical examination, and the report
was admitted into evidence.  The report
states, AHistory per CPS: During Spring Break
of 2001, Pt. disclosed to her father and paternal grandfather that her
stepfather had been sexually abusing her. 
The abuse consisted of her stepfather putting >lotion= on pt=s >butt= and penetrating her anus with his
penis.  This occurred on more than one
occasion.@

Although
Clarence=s outcry testimony was cumulative of
other evidence, appellant asserts it improperly influenced the jury verdict because
Clarence was the most credible witness at trial and showed by his actions that
he believed K.M.F when her testimony was otherwise suspect.  However, even if Clarence=s testimony regarding the content
of K.M.F.=s statement had been properly
excluded, the jury could still have concluded that Clarence believed K.M.F.
because he immediately called Raytwan and made sure appropriate authorities
were contacted in reaction to K.M.F.=s statement.  Further, Dr. Lukefahr=s testimony and report supported
K.M.F.=s account of the offense regardless
of Clarence=s testimony.  Therefore, the trial court=s error in admitting Clarence=s outcry testimony was harmless.  See Duncan v. State, 95 S.W.3d 669, 672
(Tex. App.CHouston [1st Dist.] 2002, pet. ref=d) (holding improper admission of
outcry testimony was harmless where similar testimony was admitted through
complainant, pediatrician, and medical records); Poole v. State, 974
S.W.2d 892, 899 (Tex. App.CAustin 1998, pet. ref=d) (holding any error in admitting
mother=s outcry testimony was cured by
admission of the complainants= testimony).








C.        Raytwan=s Testimony

Appellant
also contends that the trial court abused its discretion by admitting outcry
testimony from Raytwan Grayson because Katina was the proper outcry
witness.  However, Raytwan did not give
outcry testimony because he did not repeat K.M.F.=s statements about the offense.  He testified only that he received Aalarming news@ from K.M.F., she was upset and
crying when she told him the Anews,@ and he called Katina, a child abuse hotline, and the police
in response.  Accordingly, the trial
court did not abuse its discretion in admitting Raytwan=s testimony.  See Brown v. State, 756 S.W.2d 793, 797
(Tex. App.CHouston [14th Dist.] 1988, pet. ref=d) (holding aunt=s testimony that she was shocked by
what child told her was not inadmissible outcry because aunt did not describe
abuse); Turner v. State, 721 S.W.2d 909, 911 (Tex. App.CHouston [1st Dist.] 1986, pet. ref=d, untimely filed) (holding mother=s testimony that she called the
police after child told her about the Asituation@ was not inadmissible outcry because
she did not repeat child=s description of the abuse). 
Appellant=s second issue is overruled.

III.  Outcry Testimony
Regarding Extraneous Offense

In his
fourth issue, appellant contends the trial court erred by admitting improper
outcry testimony from Katina regarding an extraneous offense during the
punishment phase of appellant=s second trial.

A.        Katina=s Testimony








The
trial court permitted Katina to testify regarding appellant=s alleged sexual abuse of K.M.F.=s sister, K.F.[10]
At the time of trial, K.F. was eleven-years-old.  She has cerebral palsy, and except for a few
words, she does not speak.  Instead, she
communicates by nodding and shaking her head in response to Ayes@ or Ano@ questions and making other physical
gestures.  Before the punishment phase,
the trial court held a hearing to determine, in part, the admissibility of
Katina=s proffered outcry testimony.  The trial court ruled Katina could give
limited outcry testimony regarding K.F.=s nodding her head in response to
certain questions.[11]  In front of the jury, Katina testified that
she asked K.F. if appellant did Aanything to her in a sexual way,@ and K.F. nodded Ayes.@








Appellant
contends Katina=s testimony was inadmissible because K.F.=s Astatement@ regarding the Aoffense@ was not sufficiently specific to
satisfy the outcry exception.[12]  We agree. 
The outcry exception applies Aonly to statements that describe
the alleged offense.@  Tex. Code Crim. Proc. Ann. art. 38.072 ' 2(a) (emphasis added).  To constitute admissible outcry, the
statement Amust be more than words which give a
general allusion that something in the area of child abuse was going on.@ 
Garcia, 792 S.W.2d at 91; see Hayden, 928 S.W.2d at
231.  Rather, the statement must describe
the offense in some discernible manner.  Garcia, 792 S.W.2d at 91; Hayden,
928 S.W.2d at 231.[13]

Katina=s testimony that K.F. nodded Ayes@ when asked if appellant did Aanything to her in a sexual way@ is nothing more than a general
allusion to abuse.  See Garcia,
792 S.W.2d at 91; Hayden, 928 S.W.2d at 231.  The term Asexual way@ could have vastly different meanings
to different persons. See Garcia, 792 S.W.2d at 91 (recognizing
in the context of outcry statements, Ageneralities can be misleading@). 
The term does not necessarily even encompass a criminal offense.[14]  It is certainly unclear what Katina meant by Asexual way.@ 
The lack of specificity is exacerbated by the fact that K.F. is a child,
has an I.Q. in the 60=s, and was found incompetent to testify.  Because the meaning of Asexual way@ is unclear to us, we doubt K.F.
understood what she was answering when she nodded Ayes@ to Katina=s question.  We recognize outcry statements may be
admissible despite the unsophisticated language used as long as the offense was
described in some discernible manner.  See,
e.g., Rodriguez v. State, 997 S.W.2d 640, 642 (Tex. App.CCorpus Christi 1999, no pet.)
(finding social worker=s outcry testimony was proper where child told social worker
that defendant put his Aprivate part@ into her Aprivate part@); Rainey v. State, 763 S.W.2d 470, 471B73 (Tex. App.CHouston [14th Dist.] 1988, no pet.)
(holding mother was proper outcry witness where child told mother that
defendant Aput his thing in [her]@). 
However, here, no offense was described at all, much less in any
discernible manner.








Accordingly,
K.F.=s Astatement@ did not satisfy the outcry
exception, and the trial court abused its discretion by admitting Katina=s outcry testimony.  See Smith v. State, 131 S.W.3d 928,
931 (Tex. App.CEastland 2004, pet. ref=d) (affirming that child=s statement to his mother that A[defendant] had been performing oral
sex@ on him was nothing more than a
general allusion to sexual abuse because child did not relay any specific
details about the offense); Bradshaw v. State, 65 S.W.3d 232, 239B40 (Tex. App.CWaco 2001, no pet.) (determining
mother was not outcry witness where child told mother defendant Ahad been touching her@ but offered no details; however,
aunt was outcry witness because she asked child where the touching had
occurred, and child pointed to the area between her legs and said defendant put
his finger inside her);  see also Bui
v. State, No. 05‑96‑00901‑CR, 1998 WL 420303, at *3B4 (Tex. App.CDallas July 28, 1998, pet. ref=d) (not designated for publication)
(finding no abuse of discretion in trial court=s determining that child=s statement to aunt that defendant Ahad sex with me@ was general allusion to abuse;
however, child=s statement to cousin that appellant
took her in the bedroom, took her clothes off, put his Aprivate@ into her Aprivate,@ and a few minutes later he took it
out and some Awhite stuff@ came out was proper outcry).

B.        Harm Analysis

Having
found that the trial court abused its discretion by admitting Katina=s outcry testimony, we must determine
whether the error is reversible.  See Tex. R. App. P. 44.2(b).  After examining the record as a whole, we are
not reasonably assured the error did not influence the jury verdict at
the punishment phase or had but a slight effect.  See id.; Garcia, 126 S.W.3d at
927; Johnson, 967 S.W.2d at 417; Drew, 76 S.W.3d at 459.








Katina=s testimony was not cumulative of
other evidence.  The trial court
precluded any mention of sexual abuse of K.F. during the guilt/innocence
phase.  The State=s only other witness at the
punishment phase was Joy Blackmon, a physician=s assistant at the University of
Texas Medical Branch, who examined K.F. 
Blackmon testified that K.F.=s genital examination revealed Ageneralized narrowing@ of the hymen which is Aconsistent with past penetrating injury.@ 
However, pursuant to appellant=s hearsay objection, Blackmon was not
allowed to testify regarding the identity of the abuser, and her medical report
was redacted to the extent it identified appellant as the abuser.  As a result, Katina=s testimony was the only evidence
that appellant, if anyone, sexually abused K.F.[15]  Therefore, if Katina=s testimony had been properly
excluded, the jury could not have concluded beyond a reasonable doubt that
appellant sexually abused K.F.[16]  In contrast, because Katina=s testimony was admitted, the jury
may have considered it together with the medical evidence and concluded beyond
a reasonable doubt that appellant sexually abused K.F.[17]  See Motilla v. State, 78 S.W.3d 352,
355 (Tex. Crim. App. 2002) (recognizing appellate court conducting harm
analysis should consider, among other items, how the error might have been
considered in connection with other evidence).

Any such
conclusion may have influenced the jury in assessing appellant=s punishment.  The State=s main purpose during the punishment
phase was to prove appellant also abused K.F., and, thus, maximize his
sentence.[18]  The State emphasized this abuse during
closing argument:








[W]hat
comes to mind when I think about [appellant], a program I saw on Discovery
Channel where you have lions going after gazelles.  And as much respect as I have for lions,
kings of the jungle, I would have to compare them to the sex offender.  Where do the lions go after a prey?  Do they go after the biggest, fastest
possible gazelle?  No.  They go after the weak, the smaller one, the
one left behind, the easy prey.  And that=s what he did. 
He went after a six year-old [K.M.F.], analy raped her, and then went
after her sister [K.F.] and vaginally raped her.

 

The State further argued,
AYou are the ones to determine what happens
to [appellant], a sex offender.  Two
victims.  Two of his step-children . . .
He was raping them.@   See Motilla,
78 S.W.3d at 355B56 (recognizing appellate court conducting harm analysis may
consider, among other items, closing arguments and whether the State emphasized
error).








The
range of punishment for the charged offense was five years to ninety-nine years
or life.  See Tex. Pen. Code Ann. ' 12.32 (Vernon 2003).  Appellant=s sentence of eighty-eight years was
near the maximum.  While the jury may
have considered a harsh sentence appropriate for aggravated sexual assault of
K.M.F., we cannot say the assertion that appellant is a multiple sex offender
who also assaulted a child with cerebral palsy did not influence the sentence.[19]  Therefore, the error in admitting Katina=s outcry testimony was harmful.  See James v. State, 47 S.W.3d 710, 713B15 (Tex. App.CTexarkana 2001, no pet.) (holding
that in defendant=s trial for aggravated sexual assault of child, improper
admission of evidence he engaged in sexual acts with other persons when they
were children likely had substantial and injurious effect on jury=s punishment verdict because it
showed continuing pattern of child abuse by defendant over a period of decades);
see also Aleman v. State, 49 S.W.3d 92, 96 (Tex. App.CBeaumont 2001, no pet.) (finding no
fair assurance improper admission of DWI convictions did not influence jury=s punishment verdict; although
convictions were not the only evidence admitted in punishment phase, prosecutor
relied on them to urge maximum sentence, and jury imposed maximum sentence).[20]  Appellant=s fourth issue is sustained.[21]

Accordingly,
we affirm the guilty verdict but reverse appellant=s sentence and remand for a new trial
on punishment.

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Opinion filed
October 21, 2004.

Panel consists of Justices Fowler,
Edelman, and Seymore.

Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The State
asserts that appellant waived this complaint by failing to object to the
mistrial.  See Tex. R. App. P. 33.1(a).  However, there is some authority that as long
as a defendant does not request or consent to a mistrial based on a deadlocked
jury, he does not waive a complaint about the mistrial by failing to
object.  See Ex parte Templin, 945
S.W.2d 254, 257 n.1 (Tex. App.CSan Antonio1997, pet. ref=d) (citing Bowles v. State, 606 S.W.2d 875, 876
(Tex. Crim. App. [Panel Op.] 1980); Davis v. State, 144 Tex. Crim. 474,
164 S.W.2d 686, 689 (1942)).  Although
appellant did not object, there is no indication he requested or consented to
the mistrial.  Therefore, we will
consider his complaint.





[2]  The statement
is admissible if (1) on or before the 14th day before the date the proceeding
begins, the party intending to offer the statement notifies the adverse party
of its intention to do so, provides the adverse party with the name of the
witness through whom it intends to offer the statement, and provides the
adverse party with a written summary of the statement; (2) the trial court
finds, in a hearing conducted outside the presence of the jury, that the
statement is reliable based on the time, content, and circumstances of the
statement; and (3) the child testifies or is available to testify at the
proceeding in court or in any other manner provided by law.  See Tex.
Code Crim. Proc. Ann. art. 38.072 ' 2(b).





[3]  With the
parties= consent, the trial court considered the testimony
from the outcry hearing before appellant=s first
trial.





[4]  The State
alleged the offense occurred on or about October 1, 2000.





[5]  About a week
later, K.M.F. added that appellant had put a sock in her mouth.





[6]  Clarence
understood Afreaking@ to mean
sexual intercourse.





[7]  The trial
court also stressed that the State Achose@ Clarence as the outcry witness.  Although the State is required to designate
an outcry witness as a prerequisite to offering the testimony, the designation
does not confer the status of outcry witness. 
Regardless of the designation, the proffered outcry witness must be the
first adult to whom the child made a statement about the offense.  See Tex.
Code Crim. Proc. Ann. art. 38.072 '
2(a)(2).





[8]  Citing Mosley
v. State, 960 S.W.2d 200, 204 (Tex. App.CCorpus
Christi 1997, no pet.), appellant contends we should review the trial court=s error under the harm analysis applicable to
constitutional errors.  See Tex. R. App. P. 44.2(a).  However, other courts have applied the harm
analysis applicable to non-constitutional errors.  See Duncan v. State, 95 S.W.3d 669,
671B72 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d) (rejecting application of the constitutional error
analysis to improper admission of outcry testimony); Thomas v. State, 1
S.W.3d 138, 142 (Tex. App.CTexarkana 1999, pet. ref=d) (same).  Because the improper admission of hearsay is
non-constitutional error, see Garcia, 126 S.W.3d at 927, we also will
use the harm analysis applicable to non-constitutional errors.  See Debow v. State, No. 14‑00‑00370-CR,
2001 WL 619178, at *1B2 (Tex. App.CHouston
[14th Dist.] Jun 7, 2001, pet. ref=d) (not
designated for publication).





[9]  Clarence=s outcry testimony in front of the jury was
essentially the same as his testimony during the outcry hearing. In sum, he
testified that K.M.F. told him appellant had sexual intercourse with her using
his penis, but she did not provide any more details about the offense and did
not tell him what part of her body appellant contacted with his penis.





[10]  Because they
have the same initials, we will refer to the sister as K.F., while the
complainant is K.M.F.





[11]  At the
hearing, Katina testified she had previously asked K.F. if appellant did
anything to her in a sexual manner, and K.F. nodded Ayes.@  When Katina
asked what appellant did, K.F. grabbed her vagina and pointed to her Abackside.@  Based on its observations of K.F., the trial
court concluded she  was incapable of
grabbing and pointing to the extent described, so Katina=s testimony regarding those gestures was not
credible.  Therefore, the trial court
allowed Katina to testify regarding K.F.=s
nodding her head in response to Katina=s
questions, but not K.F.=s other gestures.





[12]  The State contends
appellant did not preserve error on this complaint because he did not object
when Katina testified in front of the jury. 
However, appellant objected to Katina=s
testimony at a hearing outside the jury=s
presence; therefore, he was not required to object again when Katina testified
before the jury.  See Tex. R. Evid. 103(a)(1); Gueder v.
State, 115 S.W.3d 11, 13B14 (Tex. Crim. App. 2003); Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Robinson v. State, 985 S.W.2d
584, 586 (Tex. App.CTexarkana 1998, pet. ref=d).  The State also asserts that appellant did not
preserve error because his objection at the hearing outside the jury=s presence did not match his complaint on appeal.  However, appellant=s Ahearsay@
objection was sufficient to preserve his complaint that Katina=s testimony did not satisfy the outcry exception.  See Long v. State, 800 S.W.2d
545, 546B48 (Tex. Crim. App. 1990); see also Lankston v.
State, 827 S.W.2d 907, 911 (Tex. Crim. App. 1992); Beckley v. State,
827 S.W.2d 74, 78 (Tex. App.CFort Worth 1992, no pet.).  Nonetheless, appellant did sufficiently
object on the same grounds raised on appeal; in addition to his hearsay
objection, appellant objected that Katina=s
testimony was not proper outcry because she could not get any meaningful
information about Awhere or when or exactly what.@ See Ex parte Little, 887 S.W.2d 62, 65
(Tex. Crim. App. 1994) (stating objection may be phrased in any manner which
sufficiently apprises trial court and opposing counsel of nature of the
complaint).  Therefore, we will consider
his complaint.





[13]  We note the
outcry exception does not ordinarily apply to hearsay statements regarding an
extraneous offense.  By its own terms,
article 38.072 applies Aonly to statements that describe the alleged
offense.@  Tex. Code Crim. Proc. Ann. art. 38.072 ' 2(a) (emphasis added); see Beckley v. State,
827 S.W.2d at 78 (recognizing outcry exception statute does not extend to a
child=s outcry respecting an extraneous offense); see
also Howard v. State, No. 14-99-01004-CR, 2003 WL 21195473, at *3 (Tex.
App.CHouston [14th Dist.] May 22, 2003, pet ref=d) (not designated for publication) (same). However,
on appeal, appellant does not challenge the admissibility of outcry testimony
regarding an extraneous offense in general. 
Instead, he asserts this particular outcry testimony was inadmissible
based on its content.





[14]  In its notice
of intent to introduce extraneous offenses, the State asserted it intended to
introduce evidence of Aaggravated sexual assault@ of K.F.  The
term Asexual way@ is too
general to describe any prohibited conduct, much less aggravated sexual
assault.  See Tex. Pen. Code Ann. ' 22.021 (Vernon Supp. 2004B05) (requiring actor=s mouth,
anus, or sexual organ to contact or penetrate the mouth, anus, or sexual organ,
of the child, or vice-versa, to constitute aggravated sexual assault).





[15]  Appellant
introduced evidence that some experts now consider Blackmon=s finding, traditionally associated with physical
abuse, to be a normal variation in girls who have not been sexually
abused.  Regardless of any conflicting
medical evidence, Katina=s testimony was the only evidence that appellant
may have sexually abused K.F.





[16]  The jury was
properly instructed that it could not consider evidence of an extraneous
offense in assessing punishment unless it found beyond a reasonable doubt that
appellant committed the offense.  See
Tex. Code Crim. Proc. Ann. art.
37.07 ' 3(a)(1) (Vernon Supp. 2004B05); Fields v. State, 1 S.W.3d 687, 688 (Tex.
Crim. App. 1999). 





[17]  Further, the
generality of Katina=s testimony allowed the jury to interpret the meaning
of Asexual way.@
Considering the medical evidence, the jury may have given Asexual way@ its
most drastic meaning as  urged by the
State and concluded that appellant Avaginally
raped@ K.F.





[18]  Although the
State introduced appellant=s past convictions for forgery of a commercial
instrument, theft, and public intoxication, none of these offenses rose to the
level of a sexual offense against a child.





[19]  During
deliberations, the jury asked to see K.F.=s
medical report indicating it was considering the alleged abuse of K.F. in
determining punishment.





[20]  Cf. Brooks
v. State, 76 S.W.3d 426, 435B36 (Tex.
App.CHouston [14th Dist.] 2002, no pet.) (holding State=s failure to give notice of intent to use
unadjudicated extraneous offenses in punishment phase of defendant=s trial for cocaine possession was harmless; trial
court stated its punishment determination would not be based on any
unadjudicated offense, defendant had previous final conviction for cocaine
possession, and trial court imposed sentence lower than State requested.); Hicks
v. State, 901 S.W.2d 614, 617B18 (Tex.
App.CSan Antonio 1995, pet. ref=d) (finding remarks by witness and trial judge
regarding extraneous offenses did not prejudicially influence jury=s decision to assess eighty years= sentence for aggravated sexual assault where it heard
evidence of defendant=s previous convictions for aggravated sexual assault,
robbery, statutory rape, and burglary).





[21]  In his third
issue, appellant also contends Katina=s
testimony regarding the extraneous offense was improper because she was allowed
to interpret K.F.=s gestures. 
Based on our disposition of appellant=s fourth
issue, we need not address his third issue.