**Ex parte James TEMPLIN.**

**No. 04–96–00721–CR.**

Court of Appeals of Texas,
San Antonio.

April 16, 1997.

Discretionary Review Refused
June 4, 1997.

Jimmy Parks, Phillips & Parks, San Antonio, for appellant.

Robert Covington, County Attorney, James M. Noble, IV, Assistant County Attorney, Seguin, for appellee.

Before STONE, GREEN and DUNCAN, JJ.

PER CURIAM.

James Templin filed a petition for writ of habeas corpus, asserting that former jeopardy precludes the State from trying him for driving while intoxicated. The trial court granted the writ but denied relief. Templin appeals. For the reasons that follow, we affirm.

### FACTS

Templin's trial for driving while intoxicated commenced on March 6, 1996, and ended the next day with a hung jury. The State began presenting its case at 1:30 p.m on March 6. Two narcotics task force officers testified that they observed Templin driving erratically and that they reported their observations to the sheriff's office. Two deputy sheriffs involved in Templin's arrest also testified. One of these deputy sheriffs, the arresting officer, testified that Templin smelled of alcohol, that Templin was unsteady on his feet, and that Templin said he had several strong mixed drinks earlier. The arresting officer called in a state trooper to conduct sobriety tests on Templin. After the state trooper arrived and conducted a field sobriety test, Templin was transported to the intoxilizer room of the Guadalupe County Jail, where other sobriety tests were conducted. A videotape of the events that occurred in the intoxilizer room was played for the jury. The arresting officer testified that Templin had difficulty on one of the tests and could not complete another test, but he was able to recite the alphabet. The arresting officer's

direct testimony concluded at approximately 5:00 p.m., and the court recessed.

Court resumed at 8:30 a.m. on March 7. After the cross- and re-direct examinations of the arresting officer, the State called its final witness, the state trooper. He testified that he conducted a horizontal gaze nystagmus test on Templin and that the test indicated that Templin was intoxicated. He also testified that Templin refused to take the intoxilizer test. The state trooper's testimony concluded at 11:00 a.m., and the State rested its case.

Between 11:00 a.m. and 11:45 a.m., Templin moved for a directed verdict, a recess was taken, and Templin's first witness, Dr. Mark Flanagan, testified. Dr. Flanagan, a chiropractor, testified that Templin had a back injury that reduced his balance and made it difficult for him to move up and down. At approximately 11:45 a.m., the court recessed for lunch. Court resumed at 12:30 p.m. with the testimony of Kenneth Wagner, one of Templin's friends. He testified that on the day Templin was arrested, he and Templin had spent the day doing physical labor and that Templin appeared to be experiencing pain in his back. The last witness was Jim Wolfington, another of Templin's friends. He testified that Templin called him after he had been arrested and asked him to get Templin's car. When Wolfington arrived on the scene, Templin and the arresting officer were still there. According to Wolfington, Templin did not appear to be intoxicated. Wolfington's testimony concluded at approximately 1:49 p.m.

Jury deliberations began at approximately 2:43 p.m. At 4:10 p.m., the jurors sent out a note reporting that they were deadlocked three to three. The trial judge then gave the jurors a supplemental charge over Templin's objection. At 5:30 p.m., the jurors sent out another note reporting that they were still deadlocked three to three. The following exchange then occurred:

The Court: Anyone wishing to make a motion at this time?

Mr. Noble [the prosecutor]: Judge, I don't think—they've been three and three for a couple, three hours now. I don't think that's likely to change. So, I certainly wouldn't object to you declaring a mistrial based on the jury deadlock.

The Court: Any suggestions, Mr. Parks? Do you want to make a motion?

Mr. Parks [counsel for Templin]: I don't want to make a motion, Judge.

The Court: Well, it's 5:30. I don't think they're going to change. So, we can go ahead and grant a mistrial.

Mr. Noble: If somebody made a motion, I guess you would—I'll move really for a mistrial based on the length of the deliberations and the consistency of the deadlock being three to three.

The trial court then called the jury back to the courtroom. In response to questioning by the trial court, the presiding juror stated the jury had been unable to reach a verdict, she did not believe the jury would be able to reach a verdict, the jury was still deadlocked at three to three, and the jury had received and read the supplemental charge. The trial court then declared a mistrial and discharged the jury. At that point, counsel for Templin stated, "Just for the record we just want to get our objection to the mistrial."

## DISCUSSION

■ The Texas Code of Criminal Procedure provides that "[a]fter the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree." TEX. CODE CRIM.PROC.ANN. art. 36.31 (Vernon 1981). It is within the trial court's discretion to determine when a jury has been together for so long that it is "altogether improbable that it can agree." The trial court's exercise of this discretion is determined by the amount of time the jury has deliberated considered in light of the nature of the case and the evidence. *Patterson v. State*, 598 S.W.2d 265, 268 (Tex.Crim.App. [Panel Op.] 1980).

■ In one point of error, Templin argues that the trial court abused its discretion in discharging the jury because it had not been kept together for so long that it was

altogether improbable that it could agree.[1] To support this argument, he asserts that this was a complicated case. He points out that a total of eight witnesses testified, he was able to demonstrate some inconsistencies in the testimony of the State's witnesses on cross-examination, and seven exhibits were admitted into evidence. The exhibits included x-rays showing Templin's back injury, pictures of the place where the arrest occurred, drawings made during the officers' testimony to illustrate Templin's erratic driving, and the videotape of Templin in the intoxilizer room.[2]

A review of the jury charge and the statement of facts, however, indicates that this was a routine DWI case revolving around a single issue—whether Templin was intoxicated on the night in question. *See Hernandez v. State,* 740 S.W.2d 594, 596 (Tex.App.—San Antonio 1987, pet. ref'd) (relying on jury charge and statement of facts, rather than number of witnesses and length of their testimony, to determine the complexity of the case). Most of the testimony and exhibits related to this single issue.

Relying on *Beeman v. State,* 533 S.W.2d 799 (Tex.Crim.App.1976), Templin asserts that even in a simple case, it is an abuse of discretion to discharge a jury that has deliberated for a short period of time. In *Beeman,* the jury deliberated for a shorter period of time than the jury deliberated here. There was evidence that the jury deliberated for less than an hour and a half. *See Beeman,* 533 S.W.2d at 800. Although the State presented only two witnesses, the court ob-

served that it took from April 23 to April 25 to select the jury and try the case. *See id.* The court held that the trial court abused its discretion in discharging the jury. *Id.* at 801. During the brief period of deliberations, the jury vote changed dramatically: on the first ballot, the vote was six to six; on the second ballot, the vote was eight to four; and on the third ballot, the vote was ten to two. *Id.* at 800. Here, in contrast, the jury did not veer from its initial three-to-three deadlock.

■ Templin points out that in *Beeman,* the court found it significant that the trial judge questioned only the presiding juror regarding whether a verdict could be reached. *See id.* Templin notes that, as in *Beeman,* the trial court here questioned only the presiding juror. But Templin neither requested that the jurors be polled nor objected to the trial court's failure to do so. Therefore, the trial court committed no abuse of discretion in this regard. *See Boone v. State,* 506 S.W.2d 227, 229 (Tex. Crim.App.1974) (holding that while the trial court should poll the jury to determine whether a verdict can be reached, it was not reversible error to fail to poll the jury when the appellant did not request a poll or object to the lack thereof).[3]

Templin also relies on quotations from two early cases to support his contention that the trial court abused its discretion. *See Hooper v. State,* 42 S.W. 398, 398 (Tex.Crim.App. 1897); *Powell v. State,* 17 Tex. Ct.App. 345 (1884). In *Powell,* the court stated:

---

1. The State argues that Templin waived this argument by failing to object to the mistrial in a timely manner. Templin asserts that a defendant is not required to object in this situation. *See Davis v. State,* 144 Tex.Crim. 474, 164 S.W.2d 686, 689 (1942) (holding that defendant's plea of former jeopardy should have been sustained when the defendant neither consented to nor protested the jury's discharge); *see also Bowles v. State,* 606 S.W.2d 875, 876 (Tex.Crim.App. [Panel Op.] 1980) (holding that jury that cannot agree may be discharged if both parties consent or if defendant's counsel requests discharge). Here, Templin neither requested nor consented to the jury's discharge. Accordingly, he did not waive the claimed error.

2. Templin notes that during the prosecutor's closing argument, the prosecutor characterized

the videotape as being "extremely long about the whole breath test thing" and encouraged the jury to replay the videotape during its deliberations. But there is no indication in the record regarding how long the videotape lasted.

3. Templin also points out that although the prosecutor told the jury during his closing argument that its deliberations would not be timed, the prosecutor later moved for a mistrial based on the length of time that the jury had been deliberating. But there is nothing in the record to indicate that the jurors believed they could reach a verdict if they were given additional time. The presiding juror specifically stated that she did not believe the jury would be able to reach a verdict.

Would three hours and a half be such a time as would necessarily render it *altogether improbable* that [the jurors] could agree? Not that they would, but that they *could* agree? We think not. And so believing, we are of opinion the court abused his discretion in thus discharging the jury to the injury of the defendant's rights. 17 Tex. Ct.App. at 353. As this quotation demonstrates, in *Powell*, the court focused on the amount of time that the jury deliberated. Later cases have made clear, however, that the court should focus not only on the amount of time that the jury has deliberated, but also on the nature of the case and the evidence. *See, e.g., Patterson*, 598 S.W.2d at 268. Furthermore, the statements quoted above were made in reference to the trial judge's rationale for discharging the jury. The trial judge in *Powell* explained that he discharged the jury because it had been out a *reasonable* time, rather than because it had been out so long as to render it altogether improbable that it could agree. There is no indication that the trial court here similarly applied an erroneous standard in deciding to discharge the jury.

In *Hooper*, the court stated in dicta, "It would be a remarkable case in which 2½ or 3 hours would be a sufficient time to render it altogether improbable that the jury could agree." 42 S.W. at 398. Templin notes that this statement was quoted with favor in *Grigsby v. State*, 158 Tex.Crim. 484, 257 S.W.2d 110 (1953). In *Grigsby*, the jury was discharged after deliberating for one hour and forty-five minutes in a driving-while-intoxicated case. The opinion does not contain any other information about the circumstances of the trial or the jury's deliberations. Relying on *Hooper*, the court held that the trial court abused its discretion. *Grigsby*, 257 S.W.2d at 110. Later cases, however, make clear that there is no fixed length of time that a jury must deliberate before it may be discharged for failure to agree. *See, e.g., Strickland v. State*, 169 Tex.Crim. 633, 336 S.W.2d 185 (1960); *Miller v. State*, 167 Tex.Crim. 561, 322 S.W.2d 289 (1959).

In *Strickland*, for example, the jury was discharged after deliberating for approximately three hours in a driving-while-intoxicated case. The jury vote had remained unchanged at three to three throughout the deliberations. Before being discharged, each juror stated that his vote would not change upon further deliberation. The court held that the trial court did not abuse its discretion in discharging the jury. *Strickland*, 336 S.W.2d at 186. In *Miller*, the appellant was tried for two misdemeanors, one of which was aggravated assault with a motor vehicle. The trial lasted from May 12 to May 13, and the jury failed to reach agreement after deliberating for approximately four hours, including a lunch period. *Miller*, 322 S.W.2d at 290. When they were discharged, the jurors were equally divided and had been deadlocked without change for two or three hours. Each juror stated that the jury could not reach agreement. The court held that the trial court did not abuse its discretion in discharging the jury. *Id.* at 291.

As the preceding discussion of the case law illustrates, the determination of whether to discharge a jury for failure to agree requires an evaluation of the circumstances surrounding the particular case. When a trial court exercises its discretion to discharge a jury, we must review the record to ascertain whether the trial court abused its discretion. In conducting this review, we are not at liberty to substitute the conclusion we may have reached for the conclusion the trial court reached. *See DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996). A trial court abuses its discretion only when it "applie[s] an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *Id.*

From our review of the record, we conclude that the trial court did not abuse its discretion in discharging the jury. Testimony in this case consumed less than eight hours. The jury deliberated for a total of approximately two hours and forty-five minutes. When the jury first informed the trial court that it was deadlocked three to three, the court gave the jury a supplemental charge, encouraging the jurors to reach a verdict if they could do so without doing

violence to their consciences. One hour and twenty minutes later, the jury informed the court that the vote stood the same—three to three. The trial court then questioned the presiding juror to determine whether continued deliberations would be futile. After the presiding juror indicated that the jury would not be able to reach a verdict, the trial court discharged the jury. Considering the nature of the case and the evidence, the trial court did not abuse its discretion in discharging the jury.

The decision of the trial court is affirmed.