No. 04-01-00417-CR



EX PARTE Julio M. AREVALO



From the County Court at Law No. 8, Bexar County, Texas


Trial Court No. 737697


Honorable Karen Crouch, Judge Presiding



Opinion by: Alma L. López, Justice


Sitting: Alma L. López, Justice

 Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: January 23, 2002


AFFIRMED

 This is an accelerated appeal of a trial court's order denying Juan Arevalo's application for
writ of habeas corpus based on double jeopardy. Arevalo contends that the trial court erred in
discharging the jury in his first trial before sufficient time had elapsed for deliberation on a verdict.
We overrule Arevalo's contention and affirm the trial court's order.

Background


 Arevalo's trial consisted of approximately ten hours of testimony presented over a three-day
period. The jury began its deliberations on Friday, November 17, 2000, at 4:15 p.m. After
deliberating approximately thirty to forty-five minutes, the jury was sent home for the weekend.
When the jury returned for deliberations on Monday, November 20, 2000, the trial court immediately
gave a supplemental charge designed to encourage them to reach a verdict. Before reading the
supplemental charge, the trial judge noted that the foreman had advised the court that the jury had
not been able to reach a unanimous decision.

 At approximately 11:00 a.m., the jury sent the following note:

 Were the defendant's rights violated? We understand that his rights were not read to
him. Should this concern us?


The trial court responded, "You have all the evidence before you. Please continue to deliberate."
At approximately 1:45 p.m., the jury sent a second note:

 The members of the jury are split evenly. We have made no progress since Friday
afternoon. Everyone has participated openly. We keep going in circles. Please, give
us some guidance.


The trial court responded, "You have all the evidence before you. Please continue to deliberate."
At approximately 2:49 p.m., the jury sent a third note:

 Sir. Half of us find the defendant guilty on at least one of the criteria for a DWI.

 a. Are we right to think he is guilty? or

 b. Should we find him not guilty if we have reasonable doubt on two of the criterias
[sic].

 c. Could we have a copy of the court transcripts if we request them?


The clerk's record does not contain a response from the trial court to the third note. At
approximately 3:31, the jury sent a fourth note:

 We believe that instructions given to us during the trial conflict with the charge of the
Court document. We need somebody to answer our previous question.


The clerk's record does not contain a response to the fourth note. The jury was subsequently
returned to open court. No time is noted in the reporter's record; however, after the supplemental
charge was read in the morning, the trial court noted that a juror needed to leave by 3:45 p.m. When
the jury returned, the trial judge questioned the jury foreman as follows:

 THE COURT: Okay, ladies and gentlemen of the jury, it is my understanding that
you have not reached a verdict and that you have not been able to reach a verdict.

 JUROR: That's correct.

 THE COURT: You are the foreman?

 JUROR: I am, sir.

 THE COURT: Okay, then this Court is going to declare a mistrial. And you all are
free to leave.


 Arevalo filed an application for writ of habeas corpus with a special plea of double jeopardy,
asserting that a retrial was jeopardy-barred because the trial judge "sua sponte granted a mistrial
without the defense ever moving or approving a mistrial." At the conclusion of a hearing on the
merits of Arevalo's application, the trial judge stated:

 THE COURT: My instructions to Judge Alonso were to continue the deliberations
until Wednesday, and he on his own elected to give them the Allen charge. So I don't
know what his basis or his thinking was, but I told him to keep them out until
Wednesday if he had to. So I'm going to take this matter under advisement and do
a little research. Juan will set it in two weeks for you.


Ultimately, the trial court denied relief, and Arevalo timely filed this appeal.

Discussion


 The sole issue presented on appeal is whether the trial court erred in discharging the jury
before sufficient time had elapsed for deliberation on a verdict. Arevalo contends that the jury was
given too short a time to deliberate, and the trial court did not make a sufficient inquiry into whether
the jurors were in fact deadlocked. (1)

 "After [a] cause is submitted to the jury, [the jury] may be discharged when it cannot agree
and both parties consent to its discharge; or the court may in its discretion discharge [the jury] where
it has been kept together for such time as to render it altogether improbable that [the jury] can agree."
 Tex. Code Crim. Proc. Ann. art. 36.31 (Vernon 1981). The trial court has the discretion to
determine when a jury "has been kept together for such time as to render it altogether improbable that
[the jury] can agree." Id.; Jackson v. State, 17 S.W.3d 664, 676 (Tex. Crim. App. 2000); Ex parte
Templin, 945 S.W.2d 254, 256 (Tex. App.--San Antonio 1997, pet. ref'd). In determining whether
the trial court has abused its discretion, we consider the amount of time the jury deliberated in light
of the nature of the case, the length of the trial and the volume of evidence submitted. Jackson, 17
S.W.3d at 676-77; Ex parte Templin, 945 S.W.2d at 256.

 The case was a routine DWI case. Based on the defense presented, however, the jury was
required to consider several issues: (1) the validity of the traffic stop; (2) the validity of the intoxilyzer
test result; (3) the validity of the extrapolation testimony; and (4) whether Arevalo was intoxicated
while operating a motor vehicle. 

 The only witness presented on the first day of trial was the arresting officer, whose testimony
lasted approximately two hours. The arresting officer testified that he stopped Arevalo for traffic
violations; i.e., spinning his tires and turning left from an improper lane. The officer further testified
that Arevalo smelled of intoxicants, had bloodshot eyes and slurred speech, and failed several field
sobriety tests. The officer stated that his opinion was that Arevalo was intoxicated and had lost the
normal use of his mental and physical faculties.

 The following day the jury heard from two additional state witnesses whose testimony lasted
approximately three and one-half hours. First, the intoxilyzer operator testified that Arevalo's
intoxilzyer results were .124 and .119. Second, George McDougall extrapolated Arevalo's results
from the time of the test to the time he was driving and provided a possible range of blood alcohol
concentrations which exceeded the legal limit.

 On the third day of trial, the jury heard approximately four and one-half hours of testimony.
The first two-thirds of the reporter's record from the third day of trial contains the continued
testimony of McDougall. The second one-third of the reporter's record contains the testimony of
Arevalo and three defense witnesses. One witness, who was with Arevalo when he was arrested,
testified that Arevalo was not intoxicated. Two other witnesses testified that Arevalo did not drink.
Arevalo testified that he had consumed some champagne following a football game, but he was not
intoxicated. Arevalo stated he made the improper turn because of the confusing configuration of the
lanes.

 Having reviewed the entire record, it appears that the jury was presented with the type of
evidence typically presented in a routine DWI case. The testimony lasted approximately ten hours.
Prior to continuing its deliberations on November 20, 2000, and at 1:45 p.m. on November 20, 2000,
the jury informed the trial court that they were split. In addition, at 2:49 p.m. on November 20, 2000,
the jury again informed the trial court that only half of the jury had reached a guilty verdict. Finally,
in its last note at 3:31 p.m. on November 20, 2000, the jury reminded the trial court that it needed
an answer to its prior note. Accordingly, in five hours of deliberations, the jury made reference to
the fact that it was deadlocked on four occasions. Although Arevalo complains that the trial court
questioned only the jury foreman before granting the mistrial, Arevalo "neither requested that the
jurors be polled nor objected to the trial court's failure to do so." Ex parte Templin, 945 S.W.2d at
257. Considering the nature of the case, the length of the trial and the evidence presented, the trial
court did not abuse its discretion in discharging the jury and granting the mistrial.

Conclusion


 The trial court's order is affirmed.

 Alma L. López, Justice

DO NOT PUBLISH


1. The State contends that Arevalo waived his complaint by failing to object to the mistrial; however, as the
State acknowledges, this court previously rejected the same waiver argument in Ex parte Templin, 945 S.W.2d 254,
257 n.1 (Tex. App.--San Antonio 1997, pet. ref'd). Because Arevalo did not request nor consent to the jury's
discharge, he did not waive his complaint. Id.