

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00053-CR

GERALDO CORRAL, A/K/A RODNEY SERNA,
A/K/A ALFRED HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Sherman County, Texas
Trial Court No. 878, Honorable Ron Enns, Presiding

October 28, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Geraldo Corral a/k/a Rodney Serna a/k/a Alfred Hernandez appeals his convictions and resulting sentences for aggravated sexual assault[1] and indecency with a child.[2] Appellant was charged under a six-count indictment. Counts one through four alleged he committed aggravated sexual assault of K.T., the daughter of his girlfriend

---

[1] Tex. Penal Code Ann. § 22.021( (West Supp. 2013).

[2] Tex. Penal Code Ann. § 21.11 (West 2011).

Gina Sanchez. Counts five and six alleged he committed indecency with a child toward K.T. A jury found appellant guilty on counts one, four, five and six and not guilty on counts two and three. The jury assessed punishment at eighteen years' confinement in prison for counts one and four and five years' confinement for counts five and six. The sentences run concurrently. Through three issues alleging insufficiency of the evidence, improper jury communication by the trial court, and abuse of discretion for not granting a mistrial, appellant appeals. We will affirm.

## Background

K.T. was born in October 1998. Appellant and Sanchez, K.T.'s mother, began a dating relationship in 2004. They lived together at times.

In November 2004, appellant and Sanchez moved to Stratford, Texas. Beginning in April 2005, K.T. lived with them in three different residences in Stratford. One of the residences was a white house with red window frames[3] on Poplar Street, in which they lived from August 2005 through June 2006. K.T. referred to appellant as "dad." Others called him "Cholo." In July 2006, the three moved to a house on South Wall Street, where they were joined a few weeks later by Sanchez's teen-aged sons "J.F." and "T."

The relationship between appellant and Sanchez was volatile. Appellant described Sanchez as a "real jealous person." He moved out more than once,

---

[3] The house is depicted in a color photograph, State's exhibit 2.

sometimes on Sanchez's orders[4] and other times on his own volition. One such occasion occurred in July 2006, when, appellant testified, Sanchez ordered him out of the house after K.T. told her appellant was "cheating on her" with K.T.'s former babysitter. Appellant said K.T. later admitted her story was a fabrication. Sanchez later asked appellant to return to the home.

The couple's relationship worsened after her sons moved in. Appellant moved out for the last time in August or September 2006. He testified he did so, "Because I couldn't handle it no more, fight every day, you know, and all because of her kids so . . . ." There also was evidence that appellant's moving out was related to Sanchez's accusation he had an inappropriate relationship with a local sixteen-year-old female.

A Stratford police officer testified Sanchez called him in October 2006 to report that K.T. had told her appellant had "touched" her.[5] Sanchez told the officer she believed some of K.T.'s allegations but not all of them. When the officer visited with K.T., the child said appellant had touched her "chichis" and rubbed her below her "belly button." She was interviewed by a counselor at the Bridge, a children's advocacy center in Amarillo, giving her essentially the same report. Appellant was then arrested and charged with indecency with a child. He was jailed on October 19 and remained in jail until the time of trial.

Two months later, on December 13, 2006, Sanchez again contacted Stratford police, and reported K.T. was experiencing vaginal bleeding and had a rash. According

[4] Appellant testified, "[S]he kicks me out if I don't do what she says."

[5] Other testimony showed the officer was acquainted with the family because of previous domestic disturbances.

to this report from Sanchez, appellant's conduct toward K.T. had been far worse than initially reported. She said he had penetrated K.T.'s vagina with his penis and fingers and placed his penis in her mouth. K.T. was taken to Amarillo for an examination by a sexual assault nurse examiner (SANE) and back to the Bridge for another interview. During the SANE examination, K.T. told the examining nurse that she was penetrated anally by appellant. K.T.'s written history was in evidence and read to the jury by the SANE nurse. It included allegations appellant penetrated the child's sexual organ, mouth and "butt" with his penis, "put his mouth on my boobs," and "made me put my mouth on his private." It also contained the statements, "Cholo did it last year when school started, then he moved out then came back and started doing it again. He done it a lot of times. He told me not to tell or he'd kill my family. . . ."

In addition, the history included K.T.'s allegation a neighbor once "touched my private."

The nurse examiner found no signs of trauma to the child's labia majora, labia minora, or hymen. K.T. did not report bleeding and the nurse saw no indication of a rash.

According to appellant, K.T. had previously fabricated another allegation against him. On that occasion, he testified, she fell from her bicycle and sustained a large bruise on her hip. At school, she reported the bruise was the result of a spanking by appellant. He said Child Protective Services investigated the matter and took no further action.

4

K.T. testified at trial. Asked if she ever had seen appellant's "private," she told the jury she did so in her "mom's room" at the "house with the red windows." It looked like a "stick" and emitted "gooey stuff." She said on "many" other occasions at the house with red windows, appellant touched her "boobs." "Probably more than ten times" at the house with red windows appellant "put his private in [K.T.'s] private," and "gooey stuff" went into her private. This "hurt" K.T., who said she was age seven at the time. "[F]our or five" times appellant "put his finger into [her] private." On one occasion this occurred at the house with red windows. Appellant twice "put his private in [her] mouth." This once occurred in her "mom's" room at the house on South Wall Street. Three times appellant "put his private in [her] butt." One of these acts took place at the house on South Wall Street. K.T. told the jury appellant said he would "hurt" her mother if she told anyone of these events.

K.T. also testified to the incident involving the neighbor. She said he "always" gave her ice cream at his house. Once he touched her private. She said she reported this to her teacher who responded, "'Oh, he's just playing.'"

K.T. further testified to sexual contact by her brother J.F. Once when K.T. was sick and in her mother's bed, and appellant and Sanchez were not at home, J.F. lay in bed with K.T. and touched her private. J.F. once asked K.T. to "have sex." She declined but told a counselor at the Bridge they "kind of" had sex. She could not recall at trial what she meant by "kind of." Later at trial she agreed that J.F. put his penis in her mouth, in her "butt," they "had sex," and "that he put his private on [her] private," causing pain that made her cry. She testified Cholo did more "things" to her than J.F.

5

A relative of appellant testified K.T. told her that one night while appellant and Sanchez slept, J.F. and T. touched her and it hurt "a lot."

Trial began on August 27, 2007, and the sentences were imposed on August 29, 2007. Appellant did not file a motion for new trial nor did he timely file a notice of appeal. However, he was granted an out-of-time appeal through habeas corpus proceedings in the Court of Criminal Appeals.[6] After appeal to this court was perfected, the case was twice abated and remanded to the trial court for determination of questions relating to appellant's representation by counsel on appeal.[7] On the second remand, the trial court appointed appellant's present counsel.

## Analysis

In his first issue, appellant argues the evidence was insufficient to support conviction under counts one, four, five and six.

When deciding whether evidence is sufficient to support a conviction, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In applying the *Jackson* standard of review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

---

[6] *See Ex parte Corral,* No. AP-76,459, 2010 Tex. Crim. App. Unpub. Lexis 694 (Tex.Crim.App. Nov. 24, 2010) (not designated for publication).

[7] *See Corral v. State,* No. 07-11-00053-CR, 2011 Tex. App. Lexis 7598 (Tex.App.—Amarillo, Sept. 19, 2011) (per curiam order, not designated for publication); *Corral v. State,* No. 07-11-00053-CR, 2012 Tex. App. Lexis 807 (Tex.App.—Amarillo, Jan. 31, 2012) (per curiam order, not designated for publication).

6

have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). As the Court of Criminal Appeals has explained, the *Jackson* standard accounts for the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (*quoting Jackson*, 443 U.S. at 319). Therefore, when the evidence would support conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and must defer to that determination. *Clayton*, 235 S.W.3d at 778 (*citing Jackson*, 443 U.S. at 319. The deference we are required to give a jury's verdict is perhaps most acute when it depends on the jury's evaluation of the credibility of witnesses and the weight to be given their testimony. *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex.Crim.App. 2010) (plurality op.) (under *Jackson* standard, reviewing court is required to defer to jury's credibility and weight determinations).

The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault. *Soto v. State,* 267 S.W.3d 327, 332 (Tex.App.—Corpus Christi 2008, no pet.). The courts give wide latitude to testimony given by child victims of sexual abuse. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex.Crim.App. 1990) (en banc). The victim's description of what happened need not be precise, and the child is not expected to communicate with the same level of sophistication as an adult. *Soto,* 267 S.W.3d at 332. Corroboration of the victim's testimony by medical or physical evidence is not required. *Id.* at 332; *Ozuna v. State,* 199 S.W.3d 601, 606 (Tex.App.—Corpus Christi 2006, no pet.). *See also Cantu v. State,* 366 S.W.3d 771, 775-776 (Tex.App.—Amarillo 2012, no pet.).

To convict appellant of aggravated sexual assault under the counts alleged in the indictment, it was for the State to prove beyond a reasonable doubt that appellant intentionally or knowingly caused the penetration of the anus or sexual organ of K.T. (Counts I, II, and III); caused the penetration of the mouth of K.T. by the sexual organ of appellant (Count IV); and K.T. was younger than 14 years of age. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i)(ii),(2)(B) (West Supp. 2013).

To convict appellant of indecency with a child under the counts alleged in the indictment, the State was required to prove beyond a reasonable doubt that K.T. was a child younger than seventeen years of age and not his spouse, of the same or opposite sex, with whom he engaged in sexual contact (Count V) or with the intent to arouse or gratify sexual desire exposed any part of his genitals, knowing K.T. was present (Count VI). Tex. Penal Code Ann. § 21.11(a)(1) & (a)(2)(A) (West 2011). Under section 21.11 sexual contact includes touching, including touching through clothing, of any part of K.T.'s breast, if committed with the intent to arouse or gratify sexual desire. Tex. Penal Code Ann. § 21.11(c)(1) (West 2011).

Testifying before the jury, appellant emphatically denied any improper sexual contact with K.T. He acknowledged it might have been possible she saw him as he arose from bed of a morning, but denied he ever intentionally exposed his genitals to K.T. He testified he has been around children all his life and has never before been accused of any sexual misconduct. He told the jury he believes the child was induced by Sanchez to fabricate the stories and allegations after he left their relationship.

8

On appeal, appellant emphasizes the evidence of K.T.'s prior fabrications. He also points to the very significant differences in the story K.T. told the Bridge interviewer in October, in which she mentioned only touching her "chichis" and her belly button area, from that she told in December, of repeated vaginal, anal and oral penetration, when appellant had been in jail since October. He points also to the questions raised by the child's accusations that others have sexually assaulted her, questions concerning potential fabrications and concerning the possibility that the sexual experiences she testified to came from the actions of her brother rather than appellant. He notes the sexual assault exam did not confirm Sanchez's report of vaginal bleeding or a rash. Appellant also notes the evidence of Sanchez's jealous and accusatory nature.

Certainly there were conflicts in the evidence the jury heard, and conflicting inferences rationally can be drawn from the evidence. K.T.'s testimony contained inconsistencies that reasonably can be seen as impeaching her credibility. But her testimony before the jury was consistent with the information she gave the sexual assault nurse examiner. She testified to actions of appellant that met the elements of the counts on which he was convicted. She was thoroughly and effectively cross examined. As was its role, the jury assessed the credibility and demeanor of the witnesses. The jury was free to believe some, all, or none of the evidence supporting appellant's innocence or guilt. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). This latitude also applied to the evidence of unlawful acts allegedly committed against K.T. by others, as well as that of the jealousy of Sanchez and her intent to harm appellant through fabricated allegations. Applying the *Jackson* standard, we conclude a rational trier of fact could have found beyond a reasonable doubt each essential

9

element of each offense on which a conviction was returned. We overrule appellant's first issue.

In his second issue, appellant complains that the trial court responded to a jury question with a statement "which was not read to appellant in open court."

The jury began its deliberations regarding guilt or innocence at 2:12 p.m. During the afternoon the court received and addressed five jury notes. From comments by the court, the jury was apparently provided an evening meal. The court granted the jury a twenty-minute break at 6:30 p.m. At an unspecified time thereafter, the court received a sixth jury note, marked as court's exhibit 6, which the court read on the record. The note inquired:

> Could you please let us have [K.T.'s] testimony concerning the houses with the red windows and the approximate times of the alleged abuse? There is disagreement on the date(s) of alleged abuse in house w/ red windows.
>
> /s/ [jury foreman] (Underlining in original).

Below the request the court gave its handwritten response:

> The testimony you have requested is so broad that it would require a reading of nearly all of the witnesses' testimony. Unless you can be much more specific in your request, the Court cannot provide this testimony.
>
> /s/ [district judge presiding] (Underlining in original).
>
> In regard to above (white house with red windows)[.]

In the presence of the prosecutor and counsel for appellant, the court read the portion of its response that preceded its signature. Neither expressed objection. The court did not, however, read orally the final sentence of its response, "In regard to above

(white house with red windows)." As for whether the court otherwise submitted the written question and its response, including the final sentence, to appellant or his counsel before delivery to the jury, the record is silent.[8]

In responding to a request from the jury, article 36.27 of the Code of Criminal Procedure requires the court to "first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury . . . ."[9] Before the charge is read to the jury "the defendant or his counsel shall have a reasonable time to examine the same . . . ." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007).

---

[8] On receipt of the jury's first question, the court proposed a response and asked if the State or appellant objected. Counsel for appellant responded, "Judge, I want the Court to note that I have shown [appellant] the jury's question . . . and I've also shown him the Court's proposed response." The record does not indicate this procedure was followed in conjunction with the later jury notes, but the record also does not indicate the court failed to submit the questions and responses to appellant or his counsel before tendering them to the jury.

[9] Article 36.27 provides:

> The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

Tex. Code Crim. Proc. Ann. art. 36.27 (West 2006).

11

In support of his contention the court's apparent failure to comply with the requirements of article 36.27 requires reversal, appellant cites case law holding that a trial court's substantive responses to jury questions during deliberations essentially amount to additional or supplemental jury instructions. *See Villareal v. State*, 205 S.W.3d 103 (Tex.App.—Texarkana, 2006, pet. dismissed, untimely filed) (so stating, citing *Daniell v. State*, 848 S.W.2d 145, 147 (Tex.Crim.App. 1993)). He contends the last sentence of the court's response to the jury's sixth note was such an additional instruction. We disagree.

The court's response to the jury's sixth note told the jury the court could not provide the testimony jurors requested unless the request was made more specific. The response was akin to those discussed in *Allaben v. State*, 418 S.W.2d 517, 520-21 (Tex.Crim.App. 1967), in which the court simply refuses to answer the jury's request for further instruction. Such a response is not a substantive response, and does not constitute additional instruction to the jury. *Id.* at 520; *see Daniell*, 848 S.W.2d. at 147 (citing *Allaben*, 418 S.W.3d at 520). The court's addition of the last sentence, "In regard to above (white house with red windows)," did not convert the court's non-substantive response to one of substance.

Where a communication between the jury and the trial court does not amount to an additional instruction, the court's failure to comply with article 36.27 does not constitute reversible error. *McFarland v. State*, 928 S.W.2d 482, 517-18 (Tex.Crim.App. 1996); *Dooley v. State*, 65 S.W.3d 840, 842 (Tex.App.—Dallas 2002, pet. refused). That is the case here.

12

Nor can we agree with appellant's further contention the court's addition of the last sentence to its response constituted a comment on the weight of the evidence. A trial court's comment on the weight of the evidence is improper if it implies approval of the State's argument, indicates any disbelief in the defense position, or diminishes the credibility of the defense's approach to the case. *Clark v. State,* 878 S.W.2d 224, 226 (Tex.App.—Dallas 1994, no pet.). Whether such a comment constitutes harmful error depends on its materiality, that is, whether the same issue was before the jury. *Id.* Here, there is no evidence of more than one white house, nor is there evidence of more than one house with red windows. And from the photograph in evidence it appears undisputed the white house on Poplar Street had red window frames. We see no indication from the record of dispute over the color of the windows at the white house, nor of dispute over which house K.T. was referring to when she testified some events occurred in the house with red windows. We thus see no risk that the court's written statement connecting the red windows with the white house would have been seen by a juror as supporting any position the State was taking or casting doubt on any argument appellant had presented.

For all these reasons, we overrule appellant's second issue.

By his third issue, appellant contends the trial court abused its discretion by three times failing to grant a mistrial on receipt of a communication from the jury.

In a note marked as court's exhibit 7, the jury informed the court that as of 9:00 p.m. jurors were divided on each of the six counts. The court responded, "Please continue your deliberations." Counsel for defendant moved for a mistrial on the ground,

"they're trying to tell the Court that they're deadlocked on a decision." In denying the motion, the court noted the time was 9:10 p.m., some seven and one-half hours into deliberation.

Later, the jury submitted another note which the court marked as court's exhibit 8. It sought clarification regarding K.T.'s testimony supporting the charge in count 1. The court responded that the request must be made more clear. Appellant moved for a mistrial arguing the jury's note further indicated it was deadlocked. The court denied the motion.

By its note marked as court's exhibit 9, the jury clarified the division among jurors regarding a portion of K.T.'s testimony. The court proposed to have the reporter read a brief excerpt of K.T.'s testimony to the jury. In the colloquy that followed, counsel for appellant again moved for a mistrial on the ground the jury was deadlocked. The court overruled the motion and the jury returned to open court to hear the designated excerpt. Thereafter, the jury reached a verdict, and at 10:22 p.m. court convened for its reading.

A trial court may discharge the jury in its discretion if the jury "has been kept together for such time as to render it altogether improbable that it can agree." Tex. Code Crim. Proc. Ann. art. 36.31 (West 2006). Thus an express time limit is not imposed on a jury for its deliberations. *Guidry v. State,* 9 S.W.3d 133, 155 (Tex.Crim.App. 1999). "The trial court is not bound to declare mistrial at the first sign of jury impasse." *Howard v. State,* 941 S.W.2d 102, 121 (Tex.Crim.App. 1996) (en banc). Reversal is not mandated unless the record establishes the trial court abused its discretion in holding the jury for deliberations. *Montoya v. State,* 810 S.W.2d 160, 166

14

(Tex.Crim.App. 1989) (en banc). Whether the trial court abused its discretion is assessed by the amount of time the jury deliberated considered in light of the nature of the case and the evidence. *Ex parte Templin,* 945 S.W.2d 254, 256 (Tex.App.—San Antonio 1997, pet. refused) (per curiam) (citing *Patterson v. State,* 598 S.W.2d 265, 268 (Tex.Crim.App. [Panel Op.] 1980); *cf. Jackson v. State,* 17 S.W.3d 664, 676 (Tex.Crim.App. 2000) (considering length of trial and volume of evidence for abuse of discretion determination).

Appellant was charged with six serious felonies alleging sexual misconduct with a child. By the child's testimony, the offenses alleged occurred at different locations, some identified by the exterior color of a structure. Only following its 9:00 p.m. vote did the jury indicate it had not reached a unanimous vote on each count. By that time, deliberations had been underway about seven hours, but during the period the jury had a meal and received a twenty-minute break. Nothing here suggests at the time of the 9:00 p.m. vote, or any time over the following hour and twenty-two minutes, it was improbable the jury would reach a unanimous verdict. Indeed, court's exhibit 7 can be seen as no more than a report on the progress of deliberations. And the remaining jury communications appellant questions here did not contain an express statement of perceived incurable deadlock. We conclude the trial court did not abuse its discretion by overruling appellant's three motions for mistrial, and we overrule appellant's third issue.

15

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.